PEOPLE v KILLEBREW

PEOPLE v BRIGGS

Docket Nos. 64397, 64398, 64571. Argued January 6, 1981 (Calendar Nos. 2, 3).—Decided December 23, 1982. Opinion released January 11, 1983.

Michael B. Killebrew pled guilty to two unrelated charges of armed robbery in the Recorder's Court of Detroit, Michael J. Connor, J. Before accepting the defendant's plea, the trial judge engaged in sentence negotiations with the defendant and his counsel, agreeing that if the defendant pled guilty to the charges he would be sentenced to no more than 15 to 25 years on each count to run concurrently with any sentence the defendant received on a pending federal charge. The defendant was sentenced according to the agreement. The Court of Appeals, Beasley, P.J., and Bronson and M. F. Cavanagh, JJ., affirmed by order (Docket Nos. 78-2180, 78-2181). The defendant appeals on the ground that his pleas were coerced.

Jerome Briggs pled guilty to a charge of armed robbery in the Calhoun Circuit Court, Creighton R. Coleman, J., in return for promises by the prosecutor to dismiss two other charges, to recommend a sentence of no more than 15 to 25 years in prison, and not to file a supplemental information charging him as an habitual offender. The trial court stated that it was

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 481, 483, 484, 504.

What constitutes "rejection" of plea agreement under Rules 11(e)(4) of the Federal Rules of Criminal Procedure, allowing withdrawal of plea if court rejects agreement. 60 ALR Fed 621.

Judge's participation in plea bargaining negotiations as rendering accused's guilty plea involuntary. 10 ALR4th 689.

Right to withdraw guilty plea in state criminal proceedings where court refuses to grant concession contemplated by plea bargain. 66 ALR3d 902.

[2] 21 Am Jur 2d, Criminal Law § 481.

[3] 21 Am Jur 2d, Criminal Law §§ 258, 484.

[4] 21 Am Jur 2d, Criminal Law §§ 472, 476, 484, 504.

Court's duty to advise or admonish accused as to consequences of plea of guilty, or to determine that he is advised thereof. 97 ALR2d 549.

[5] 21 Am Jur 2d, Criminal Law §§ 502, 504.

not bound by the agreement and sentenced the defendant to 20 to 40 years in prison. The Court of Appeals, D. F. Walsh, P.J., and M. J. Kelly and Oppliger, JJ., reversed, holding that the defendant should have been given an opportunity to withdraw his plea (Docket No. 78-3045). The people appeal.

In an opinion by Justice Williams, joined by Justices Kavanagh and Levin, and by Justice Coleman as to *Killebrew* only, the Supreme Court *held:*

Sentencing concerns are appropriate subjects for plea bargaining. However, the judge's role in plea negotiations, including sentence bargaining, is limited to consideration of the bargain between the defendant and the prosecutor. The judge may not become involved in the negotiation of a bargain. Where a judge chooses not to follow a prosecutor's recommendation or rejects a proffered bargain, the defendant must be given an opportunity to withdraw a plea of guilty.

1. The practice of plea bargaining has been sanctioned by the Supreme Court of the United States as offering significant benefits to defendants and to the state. Charge bargaining, a species of plea bargaining, has also been specifically approved by the Supreme Court of the United States, and its practice is well established in Michigan. At issue here are two other variations of the practice: sentence agreements and prosecutorial sentence recommendations. Sentence concerns are appropriate subjects for plea negotiations. Such negotiations must be entered on the record in open court at the time a plea is offered to facilitate review and to preserve the integrity of the court in the eyes of the defendant and the public.

2. The judicial role in plea negotiations must be limited to consideration of agreements between defendants and prosecutors so as to minimize any potential coercive effect upon the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the court as an impartial dispenser of justice. Any coercion, real or perceived, by the court in inducing the defendant's plea would render questionable the voluntariness of the defendant's waiver of his right to trial. The trial judge shall not initiate or participate in discussions aimed at reaching a plea agreement. He may not engage in negotiation of the bargain itself.

3. The court must proceed in cases in which plea negotiations are involved so as to maintain its role as a neutral arbiter, to be in a position to determine the voluntariness of a plea, to retain control over sentencing, and not to engage in or give the impression of engaging in covert negotiations. If negotiations between a defendant and a prosecutor result in a sentence

agreement or a sentence recommendation, the details of the agreement must be disclosed in open court at the time the plea is offered. Where the negotiations lead to a sentence agreement in which a guilty plea is to be given in exchange for a specific sentence disposition, the court must accept or reject the agreement or defer action until after consideration of the presentence report. In any event, there must be consideration of the presentence report before final acceptance of the agreement. If the court feels that the agreement will serve the interests of justice, it may accept the agreement. The defendant must be so informed, the plea accepted, and the terms of the agreement embodied in the judgment and sentence. If the court, in the exercise of discretion, decides that the agreement does not reflect the circumstances of the case or of the offender, it may reject the plea, and must inform the defendant on the record that it will not accept the plea, nor be bound by the agreement.

4. The defendant must be fully aware of all the consequences of his guilty plea in order to make a knowing and intelligent waiver of his rights. Such understanding is impossible where the defendant, believing a specific sentence has been agreed upon, tenders his plea only to find that he is bound, but that the court is free to impose a different sentence. Where the plea agreement offered to the court includes a non-binding recommendation of a specific sentence by the prosecutor, the court may accept the plea offered after consideration of a presentence report, but refuse to be bound by the sentence recommendation. However, the court must inform the defendant on the record that the recommendation will not be accepted and state the sentence which the court considers to be appropriate. The defendant then must be given an opportunity to affirm or withdraw his plea.

5. *Briggs* involved a sentence recommendation. The court cautioned the defendant that it was not bound by the recommendation, but did not offer the defendant an opportunity to affirm or withdraw his plea. The judgment of the Court of Appeals remanding for resentencing must be affirmed.

6. *Killebrew* involved plea negotiations initiated by the court. The coercive atmosphere fostered by judicial participation in the negotiations rendered the defendant's plea involuntary. The decision of the Court of Appeals must be reversed and the case remanded.

7. The rules articulated in this case will be applied to all future trial court decisions in which the defendant moves to vacate the sentence and withdraw his plea and to all appeals or applications for leave to appeal filed before the date of the

opinion where the issue is properly raised, and to these two cases.

The judgment of the Court of Appeals is affirmed in *Briggs* and reversed in *Killebrew*.

Justice Ryan, joined by Chief Justice Fitzgerald, concurring in part and dissenting in part, agreed that the defendant's conviction in *Killebrew* must be reversed because of the inappropriate involvement of the trial court in the plea-bargaining process. However, he did not agree that a policy should be adopted which would afford a defendant such as Briggs the right to withdraw an otherwise valid guilty plea on the ground that his hope that the trial court would accept the prosecutor's sentence recommendation was not realized. A prosecutor's recommendation should be treated as what it is: a recommendation. If advice by the trial court that it is not bound by the prosecutor's recommendation is mere ceremonial incantation, then that is true of all advice of the court required by the court rules relative to pleas of guilty and nolo contendere.

94 Mich App 723; 290 NW2d 66 (1980) affirmed.

### Opinion of the Court

1. Criminal Law — Plea Bargains — Plea of Guilty — Sentencing.

    The role of the trial court in plea negotiations, including sentence bargaining, is limited to consideration of bargains between defendants and prosecutors; the trial court may not participate in negotiations, and where it chooses not to accept a proffered bargain or follow the prosecutor's recommendation, the defendant must be given an opportunity to affirm or withdraw a plea of guilty offered as part of the agreement.

2. Criminal Law — Plea Bargains — Plea of Guilty — Sentencing.

    Sentencing concerns are appropriate subjects for plea negotiations; the results of negotiations must be entered on the record in open court at the time a plea of guilty is offered to facilitate review and to preserve the integrity of the court in the eyes of the defendant and the public.

3. Criminal Law — Plea Bargains — Plea of Guilty — Sentence Agreements.

    Agreements resulting from plea negotiations under which a plea of guilty is offered in return for a specific sentence disposition must be accepted or rejected by the court on the record after consideration of a presentence report; if the court accepts the

agreement, it must so inform the defendant, accept his plea, and embody the terms of the agreement in its judgment and sentence; if the court rejects the agreement, it must inform the defendant on the record that it will not accept his plea and will not be bound by the agreement.

4. CRIMINAL LAW — PLEA BARGAINS — PLEA OF GUILTY — SENTENCE RECOMMENDATIONS.

A trial court after consideration of a presentence report may accept a plea of guilty offered as part of an agreement under which the prosecutor recommends a specific sentence as the proper disposition of the case, yet refuse to be bound by the recommendation; however, the court must inform the defendant on the record that the recommendation will not be accepted, state the sentence which it considers to be appropriate, and give the defendant an opportunity to affirm or withdraw his plea.

CONCURRING OPINION BY RYAN, J.

5. CRIMINAL LAW — PLEA BARGAINS — PLEA OF GUILTY — SENTENCE RECOMMENDATIONS.

*A defendant should not be permitted to withdraw an otherwise valid plea of guilty as of right upon the refusal of a trial court to accept a prosecutor's sentence recommendation; a prosecutor's recommendation is not a promise of the sentence which will be imposed, and where the prosecutor makes the promised recommendation and the trial court advises the defendant that it is not bound by the recommendation the defendant should view the advice as credible and not merely as a ceremonial incantation (GCR 1963, 785.7).*

*Frank J. Kelley,* Attorney General, and *Louis J. Caruso,* Solicitor General, for the people.

*John H. MacFarlane,* Senior Assistant Prosecuting Attorney, for the people in *Briggs.*

*William L. Cahalan,* Prosecuting Attorney, *Terrance K. Boyle,* Deputy Chief, Criminal Division, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people in *Killebrew.*

State Appellate Defender (by *R. Steven Whalen,*

Assistant Defender, and *Sheila N. Robertson,* Research Attorney) for defendant Briggs.

*Culpepper & Sorise* for defendant Killebrew.

Amici Curiae:

*William L. McManus,* Third District Court Judge, for Michigan District Judges Association.

*F. Martin Tieber* for State Bar Defender Systems and Services Committee.

*Thomas M. Harp* for Criminal Defense Attorneys of Michigan.

WILLIAMS, J.

## INTRODUCTION

We granted leave to appeal in these two cases to address the issue of "whether sentencing disposition is an appropriate subject for plea agreement; and, if so, what is the proper role of the court with respect to a sentence agreement". 408 Mich 958, 959 (1980). We recognize that *"charge* bargaining" is a traditionally accepted practice in Michigan. We now proceed to determine whether or not *sentence* bargaining will likewise be accepted and, if accepted, under what terms.

We hold that sentencing concerns are appropriate subjects for plea bargaining. However, we hold that the judge's role in plea negotiations, sentence bargaining included, is limited to consideration of the bargain between the defendant and the prosecutor. The judge may not become involved in the negotiation of the bargain. Finally, the defendant must be given the opportunity to withdraw his

guilty plea if the judge rejects the proffered bargain or chooses not to follow the prosecutor's sentence recommendation.

We are appreciative of the helpful briefing of counsel, particularly the Wayne County Prosecutor.

## I. Facts

### People v Briggs

Defendant Briggs was initially charged with armed robbery, MCL 750.529; MSA 28.797; assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279; and possession of a firearm during commission of a felony, MCL 750.227b; MSA 28.424(2). Before trial commenced, the defendant and the prosecutor agreed that the defendant would plead guilty to the armed robbery count in exchange for (1) dismissal of the assault and firearm charges, (2) a recommendation by the prosecutor that the defendant receive no more than a 12- to 25-year sentence, and (3) the prosecutor's promise not to bring an habitual offender charge against the defendant.

The trial judge accepted the guilty plea but prefaced his acceptance with the warning that he was not bound by the sentence recommendation: "I will state I have not agreed upon the possibility of a plea or possible sentence in this case with anyone whomsoever, and I hereby accept your plea".

At sentencing 18 days later, the trial judge again emphasized that he was not required to follow the prosecutor's sentence recommendation,

repeated the recommendation of 12 to 25 years, and proceeded to sentence the defendant to 20 to 40 years imprisonment.

On appeal, the Court of Appeals held that the defendant should have been given the opportunity to withdraw his plea, once the judge decided not to follow the prosecutor's sentence recommendation. 94 Mich App 723, 726; 290 NW2d 66 (1980).

### *People v Killebrew*

In November, 1977, the defendant was charged with two unrelated charges of armed robbery. The defendant stood mute at the preliminary examination; the prosecutor's office offered no reduced pleas. Pretrial conference commenced with the judge, the defendant, and defense counsel present; the prosecutor was absent. The judge proceeded as follows:

"This is file 77-09003—Mr. Killebrew, you're charged with two counts of robbery armed. And of course, they both carry life and in addition you have been convicted twice in the past of robbery armed, so you can expect that you will get life if you are convicted. I presume also that the prosecutor's office would look in terms of bringing an habitual offender [charge] against you, which also carries life if you are convicted of either of these."

The trial judge then engaged in sentence negotiations with the defendant and his counsel and reached the agreement that if the defendant pled guilty he would receive a sentence of no more than 15 to 25 years on each count to run concurrently with whatever sentence the defendant would receive on a pending felony offense. The plea was entered in the presence of the defendant, his coun-

sel, and an assistant prosecuting attorney. The judge then sentenced the defendant pursuant to his agreement. On appeal as of right, the Court of Appeals affirmed the defendant's convictions without opinion.

On June 20, 1980, this Court granted leave to appeal to the prosecutor in *People v Briggs,* 408 Mich 958 (1980), and to the defendant in *People v Killebrew,* 408 Mich 959 (1980).

## II. PLEA BARGAINING

No challenge is being directed today at the constitutionality of the practice of plea bargaining. In *Brady v United States,* 397 US 742; 90 S Ct 1463; 25 L Ed 2d 747 (1970), the Supreme Court of the United States sanctioned its use, recognizing the pervasiveness of the practice and the advantages of the procedure for both the defendant and the state.

By all estimates, the practice of plea bargaining is even more pervasive today. As one commentator noted:

"The criminal justice system now disposes of virtually all cases of serious crime through plea bargaining. Depending on the jurisdiction, as many as 99 percent of all felony convictions are by plea. This nontrial procedure has become the ordinary dispositive procedure of American law." Langbein, *Torture & Plea Bargaining,* 46 U Chi L Rev 3, 9 (1978).

Given the prevalence of its use, it is not surprising that the Supreme Court of the United States has labeled plea bargaining "an essential component of the administration of justice". *Santobello v New York,* 404 US 257, 260; 92 S Ct 495; 30 L Ed 2d 427 (1971).

Of course, merely because the practice is deeply entrenched does not prove its value. The Supreme Court of the United States, however, has enumerated the benefits of the procedure.

"Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned." *Santobello, supra,* 261. See also *Brady, supra,* 397 US 752.

Thus, we begin with the premise that the general practice of plea bargaining withstands constitutional scrutiny and offers significant benefits to both the defendant and the state. Charge bargaining, a species of plea bargaining, has also been specifically approved by the Supreme Court of the United States, *Bordenkircher v Hayes,* 434 US 357; 98 S Ct 663; 54 L Ed 2d 604 (1978), and its practice is well-established in Michigan. See, *e.g., Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d 693 (1972). We now, therefore, direct our attention to two other variations of the practice: sentence agreements and prosecutorial sentence recommendations.

## III. SENTENCE BARGAINING

Any inquiry into the parameters of plea bargain-

ing must include an analysis of the mechanics. In essence, the practice involves the act of self-conviction by the defendant in exchange for various official concessions. Alschuler, *Plea Bargaining and Its History,* 13 Law & Society Rev 211, 213 (1979). The state, in the persons of the prosecuting attorney and the judge, has at its disposal various concessions to induce the defendant's guilty plea.

The judge's bargaining strength clearly lies in his statutorily granted sentencing power, MCL 769.1; MSA 28.1072. Judges can use this power to offer reduced sentences in order to persuade defendants to plead guilty.

The prosecuting attorney's strength stems from his charging power and his ability to make a sentencing recommendation to the judge.

The prosecutor has various devices in his arsenal of concessions—first, charge bargaining. The prosecuting attorney may agree with the defendant to bring reduced charges or to dismiss certain charges or cases altogether.[1] Alternately, the prosecutor may file a supplemental information charging the defendant as an habitual offender.[2] Since, generally, the defendant has little interest in the title of his crime, the prosecuting attorney's bargaining power is his ability to circumscribe the judge's sentencing discretion by locking defen-

---

[1] The decision to prosecute under one statute rather than another, or to prosecute at all, is an exclusively executive function, vested within the discretion of the prosecutor. *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d 693 (1972).

[2] See *Bordenkircher v Hayes,* 434 US 357; 98 S Ct 663; 54 L Ed 2d 604 (1978), holding that due process is not violated when a prosecutor carries out a threat made during plea negotiations to charge a defendant with more serious offenses if he does not plead guilty to the offense originally charged.

dant's crime into a lower sentencing range.[3] The second device is sentence agreement. The prosecuting attorney, after conference with the defendant, may present to the court a sentence agreement stating that the parties agree that a specifically designated sentence is the appropriate disposition of the case. The court may either accept or reject the agreement. However, if the court rejects the agreement, the defendant does not enter his guilty plea. The third device is sentence recommendation. The prosecuting attorney may promise the defendant to recommend a specific sentence,[4] or promise to make no recommendation at all. We will subsequently discuss what the court's reaction to this should be.

From this brief analysis, it is clear that the defendant may be persuaded to surrender his valuable right to trial with its accompanying rights and procedural safeguards in exchange for concessions aimed at sentence reduction and certainty. He wants to know in advance what will happen to him when he leaves the courtroom; he is bargaining for the length of his incarceration.

Given this reality, it would be disingenuous to say that sentencing concerns have no place in plea

---

[3] Newman, Conviction: The Determination of Guilt or Innocence Without Trial (Boston: Little, Brown & Co, 1966), p 105; Note, *Restructuring the Plea Bargain,* 82 Yale L J 286, 287-289 (1972); *People v Palmer,* 55 Mich App 43, 50-51; 222 NW2d 26 (1974).

[4] It is crucial to the successful operation of plea bargaining that these "recommendations" are usually accepted. Otherwise the bargain lacks sufficient certainty to induce a defendant to waive his right to trial.

In fact, the recommendations generally are accepted. See *People v Byrd,* 12 Mich App 186, 196; 162 NW2d 777 (1968) (LEVIN, J., *concurring)* ("[B]y and large, prosecutors deal and judges accept the deal, and were it otherwise the backlog would become completely intolerable.") Alschuler, *The Trial Judge's Role in Plea Bargaining, Part I,* 76 Colum L Rev 1059, 1065 (1976).

bargaining; bargaining over the duration of the sentence is the primary focus of plea bargaining. In fact, the consideration of sentencing in the plea-negotiating procedure has been tacitly recognized in GCR 1963, 785.7(4)(b), which requires the trial judge to record any plea *or sentence* agreements between the defendant and the prosecutor.

Our formal recognition today that sentence concerns are appropriate subjects for plea negotiations will, it is hoped, sweep away the last vestiges of belief that the defendant must place reliance in covert promises of the prosecutor and utter hollow answers to the judge that no promises were made. It should hereafter be understood by everyone that sentence negotiations need not and shall not be made furtively. Honest responses to bargain inquiries, including sentence agreements, will facilitate appellate review. More importantly, candor must be the order of the day to preserve the integrity of the court in the eyes of the defendant and the public.

## IV. Judicial Role in Sentence Bargaining

Having recognized the central role that sentence considerations play in plea negotiations, our next inquiry becomes the appropriate role for the judge in the procedure. Various models have been proposed which range the full spectrum from noninvolvement of the judge to judicially instigated negotiations.[5] Each model, of course, builds on the

[5] See, *e.g.*, Note, *Restructuring the Plea Bargain*, 82 Yale L J 286 (1972); Alschuler, *The Trial Judge's Role in Plea Bargaining, Part I*, 76 Colum L Rev 1059 (1976); American Law Institute, Model Code of Pre-Arraignment Procedure, § 350.3 (1975); Handbook of the National Conference of Commissions on Uniform State Laws, Uniform Rules of Criminal Procedure, Rule 441 (1974); ABA Standards for Criminal Justice (2d ed), Pleas of Guilty, Standards 14-3.1 to 14-3.4. *People v Earegood,* 12 Mich App 256, 258-259; 162 NW2d 802 (1968).

feature thought most essential to insuring a fair and workable procedure. However, we find two competing considerations which must be accommodated: on the one hand, judicial involvement in the procedure must be kept to a minimum to avoid a coercive effect on the defendant and loss of public confidence in the judicial system; on the other hand, the statute requires the judge to ultimately impose the sentence.

First the judicial role in the negotiation process must be limited for several reasons—to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice.

The problem of coercion arises from the disparate bargaining positions of the judge and the defendant: the judge wields the decisive sentencing power to which the defendant must submit. Should the trial judge exert or even seem to exert the authority of this position to induce the defendant to plead guilty, the voluntariness of the defendant's subsequent waiver of his right to a jury trial becomes questionable.

Any waiver of a constitutional right, such as the right to jury trial, must be voluntary. *Brady v United States, supra; Boykin v Alabama*, 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969). The principle of voluntariness seeks to insure the protection of the defendant's rights and the accuracy of the plea, and to discourage pleas which, though perhaps accurate, were induced by undesirable methods. McCoy & Mirra, *Plea Bargaining as Due Process in Determining Guilt,* 32 Stanford L Rev 887, 899-900 (1980).

In *Brady v United States,* the Supreme Court of the United States while condoning the practice of inducing guilty pleas by promises of leniency, recognized the potential coercive influence of the prosecutor and the judge.[6] Analogizing the practice of obtaining guilty pleas to that of obtaining confessions, the Court found that the coerciveness of the prosecutor's position could be dissipated by the presence of competent defense counsel. *Brady,* p 754. However, the Court reserved the question of judicial participation, tacitly recognizing that the same protective device would not neutralize the coercive power of the trial judge. The Court explained:

"In Brady's case there is no claim that the prosecutor threatened prosecution on a charge not justified by the evidence or that *the trial judge threatened Brady with a harsher sentence if convicted after trial in order to induce him to plead guilty."* (Emphasis added.) *Id.,* p 751, fn 8.[7]

Due to the nature of the unequal bargaining positions of the judge and the defendant, any involvement in the negotiations transforms discussions into perceived coercion. As the federal Court of Appeals for the Second Circuit eloquently explained:

[6] In fact, the *Brady* decision gave four illustrations of permissible types of plea bargaining: a guilty plea based on a prediction by the defense attorney that the trial judge will be more lenient than the jury; a guilty plea induced by the defense counsel's prediction that the judge will sentence a defendant who pleads guilty more leniently than one who goes to trial; an agreement to plead guilty to a lesser offense; a guilty plea induced by the dismissal of other charges. None of these methods involves judicial participation. See also *Bordenkircher v Hayes,* 434 US 357, 364; 98 S Ct 663; 54 L Ed 2d 604 (1978).

[7] The situation referred to in the judicial issue of the quotation has been addressed by F R Crim P 11 which prohibits judicial participation in plea negotiations in federal courts.

"Nor can we fail to consider the subtle pressures that may be exercised by a judge against a defendant who rejects an opportunity, presented by such a response as the judge here proposes to make, the acceptance of which may relieve the judge of a lengthy trial. Any predilections of guilt that a judge might hold regarding a defendant must inevitably be reinforced by the knowledge that the defendant wishes to engage in plea bargaining discussions. While these factors inhere in all plea bargaining agreements, their effect on the voluntariness of the plea and the subsequent trial could only be greater where the judge is himself the active participant in constructing the terms of the rejected agreement." *United States v Werker,* 535 F2d 198, 202 (CA 2, 1976).

Nor is it only the defendant who is harmed by allowing the judge to become involved in the negotiation of the plea bargain. The public perception of the judge as a neutral arbiter must suffer when the judge descends from the bench to barter with the defendant and prosecutor over the terms of the deal he advocates. The *Werker* court explained:

"Rule 11 [prohibiting judicial participation in plea bargaining] implicitly recognizes that participation in the plea bargaining process depreciates the image of the trial judge that is necessary to public confidence in the impartial and objective administration of criminal justice. As a result of his participation, the judge is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant." (Footnote omitted.) *United States v Werker, supra,* 203.

See also *State v Buckalew,* 561 P2d 289 (Alas, 1977); *People v Clark,* 183 Colo 201; 515 P2d 1242 (1973).

Therefore, judicial participation must be limited in order to minimize the coercive effect of such

participation on the defendant, to insure the voluntariness of plea, and to preserve public confidence in the judicial system.

The second consideration which we feel is essential to our analysis is the fact that the judge must be involved ultimately in the sentence-bargaining process. This involvement is mandated by statute.

As we have discussed, the primary focus of plea bargaining is the determination of sentence duration. The sentencing function, however, has been designated by the Legislature as a function of the judiciary. MCL 769.1; MSA 28.1072; *People v White,* 41 Mich App 370, 379; 200 NW2d 326 (1972), *aff'd* 390 Mich 245; 212 NW2d 222 (1973). If the judge divorces himself from the sentencing process completely, he has abdicated a statutory function. The prosecuting attorney through negotiated sentence "agreements" and recommendations then becomes the sentencing authority contrary to statute.

In balancing these competing considerations—that the degree of involvement must be kept minimal to avoid a coercive atmosphere and to retain public confidence in the judicial system and that judicial control of sentencing is required by statute—we now hold that a trial judge shall not initiate or participate in discussions aimed at reaching a plea agreement. He may not engage in the negotiation of the bargain itself. The trial judge's role in the plea-bargaining procedure shall remain that of a detached and neutral judicial official. The judge's involvement in agreements will therefore proceed along the format described in Part V.[8]

---

[8] The following procedure is based on F R Crim P 11(e)(1)-(4). The applicable sections read as follows:

"(e) Plea Agreement Procedure

"(1) *In General.* The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in

## V. THE SENTENCE-BARGAINING PROCEDURES

If the prosecuting attorney and the defendant choose to negotiate, and in fact reach a sentence agreement or sentence recommendation, the court shall require disclosure in open court of the details of the agreement at the time the plea is offered. GCR 1963, 785.7(2)(b).

### A. *Sentence Agreement*

If the sentence bargain includes a sentence

discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

"(A) move for dismissal of other charges; or

"(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

"(C) agree that a specific sentence is the appropriate disposition of the case.

"The court shall not participate in any such discussions.

"(2) *Notice of Such Agreement.* If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea.

"(3) *Acceptance of Plea Agreement.* If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

"(4) *Rejection of a Plea Agreement.* If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement."

agreement, whereby the defendant agrees with the prosecuting attorney to plead guilty in exchange for a specific sentence disposition, the court must accept or reject the agreement or defer action until the judge has had the opportunity to consider the presentence report. In any event, the judge must have considered the presentence report before final acceptance of the sentence agreement.

If the judge feels that the agreed-upon disposition will serve the interests of justice, he may accept the agreement. The court shall then so inform the defendant, accept the plea, and embody the terms of the plea agreement in the judgment and sentence.

However, if the judge, in the exercise of his discretion, finds that the bargain is not tailored to reflect the particular circumstances of the case or the particular offender, he shall reject tne plea at that time. The court shall then, on the record, inform the defendant that the court will not accept the plea or be bound by the agreement.

This Court recognized more than 20 years ago that the waiver of a jury trial cannot be knowing or voluntary when the waiver was induced by reliance on a total package of concessions by both parties to which one party—the state—is no longer bound. If the judge refuses to agree to the state's concessions, the defendant may refuse to waive his constitutional rights. *In re Valle,* 364 Mich 471, 476; 110 NW2d 673 (1961).

B. *Sentence Recommendations*

On the other hand, if the sentence bargain includes a prosecutorial sentence recommendation, *i.e.,* a mere prosecutorial recommendation without

mutual agreement by the judge, the posture of the bargain is slightly altered. Technically, the defendant has not been promised a specific sentence.[9] He may nonetheless tender his guilty plea, waiving his valuable right to trial.

Although the prosecutorial "recommendation" would seem to inform the defendant of the consequences of his plea—that the prosecutor is merely suggesting a sentence and that the judge is not bound to follow the recommendation—the truth is that most defendants rely on the prosecutor's ability to secure the sentence when offering a guilty plea. This is true even when the court specifically admonishes the defendant that it is not bound by the prosecutor's recommendation. All disclaimers that the court is not bound are often viewed as ceremonial incantations. *State v Goodrich,* 116 NH 477, 479; 363 A2d 425 (1976); Alschuler, *The Trial Judge's Role in Plea Bargaining, Part I,* 76 Colum L Rev 1059, 1069 (1976).

This situation closely parallels the one prohibited in *In re Valle, supra,* described by the Court with a quotation from a Georgia case:

" 'Of course, in theory, the accused knew that [the

[9] When the revision of F R Crim P 11 was adopted in 1975, the wording of the rule caused some confusion among the courts regarding the difference between a recommendation and a specific disposition. *Cf. United States v Savage,* 561 F2d 554 (CA 4, 1977), with *United States v White,* 583 F2d 819 (CA 6, 1978). See also Alschuler, *The Trial Judge's Role in Plea Bargaining, Part I,* 76 Colum L Rev 1059, 1070, fn 42 (1976).

The distinction was clarified with the 1979 amendment. The obligation the prosecutor assumes in a "recommendation" is discharged when he presents the agreed-upon recommended disposition to the court. In comparison, the prosecutor has not complied with the agreements to dismiss charges or to obtain a specific disposition until the charges are dismissed, or the sentence is entered. These later two agreements contemplate a specific disposition; this certainty is lacking in the prosecutorial recommendations.

court was not bound]; but if they in fact honestly thought the agreement would be carried out, then they ought to have relief from the plea. If the State is not bound by the agreement its counsel made, then the accused ought not to be held to their waiver made on the faith of such agreement.'" 364 Mich 476-477, quoting *Griffin v State,* 12 Ga App 615, 630; 77 SE 1080 (1913).

To most defendants, the distinction between a sentence agreement and a sentence recommendation is little more than a variation in nomenclature.

A full understanding of the consequences of a plea is impossible where the defendant, believing that he has negotiated a specific length of sentence, tenders his guilty plea, only to find that he is bound by the act of self-conviction, but the trial judge is free to impose any sentence within the statutory range.

However, it is not our intention to circumscribe the judge's statutorily granted sentencing discretion.

Therefore, we now hold that if the plea agreement offered to the court by the prosecutor and defendant includes a non-binding prosecutorial recommendation of a specific sentence, the judge may accept the guilty plea (after consideration of the presentence report), yet refuse to be bound by the recommended sentence. The judge retains his freedom to choose a different sentence. However, the trial judge must explain to the defendant that the recommendation was not accepted by the court, and state the sentence that the court finds to be the appropriate disposition. The court must then

give the defendant the opportunity to affirm or withdraw his guilty plea.[10]

Through this procedure, the defendant will be fully aware of all the consequences of his guilty plea. He will thus be able to make a knowing and intelligent waiver of his right to trial and its companion rights. Additionally, the judge will have full exercise of his sentencing discretion.

Various panels on the Court of Appeals have addressed this issue with contradictory results.[11] We agree with those panels finding that principles of fairness require that the defendant be given the opportunity to withdraw his guilty plea.

C. *Discussion*

We feel that these methods of procedure for sentence agreements and sentence recommendations have several important advantages. First, by

---

[10] We emphasize the limited time frame under discussion. The defendant must be given the opportunity to withdraw his plea immediately after the trial judge announces his decision to reject the plea bargain. To the extent that *People v Severn,* 303 Mich 337; 6 NW2d 536 (1942), and *People v Bencheck,* 360 Mich 430; 104 NW2d 191 (1960), conflict with this result, they are modified.

However, if the defendant chooses to affirm his guilty plea and acknowledges to the court his awareness that the bargain or a certain part of the bargain has been completely rejected by the court, the right to withdraw his plea lapses, and the former standards governing plea withdrawal will be utilized by the court. See *People v Lewandowski,* 394 Mich 529; 232 NW2d 173 (1975).

We note that under F R Crim P 11(e)(3) the defendant has no right to withdraw his guilty plea if the recommendation form of plea agreement is used. Our notion of fairness requires the contrary result.

[11] For cases granting defendant an opportunity to withdraw his plea, see, *e.g., People v Hagewood,* 88 Mich App 35, 38; 276 NW2d 585 (1979); *People v Black,* 103 Mich App 109; 302 NW2d 612 (1981); *People v Bahlhorn,* 105 Mich App 118; 306 NW2d 416 (1981); *People v Newsum,* 105 Mich App 755; 307 NW2d 412 (1981). Other panels have held that if the court has informed the defendant that it is not bound by the proffered recommendation, the defendant need not be given the opportunity to withdraw the plea. See, *e.g., People v Davis,* 74 Mich App 624; 254 NW2d 335 (1977); *People v Armstrong,* 99 Mich App 137; 297 NW2d 637 (1980); *People v Yates,* 99 Mich App 396; 297 NW2d 680 (1980); *People v Crabtree,* 112 Mich App 720; 317 NW2d 537 (1982).

limiting judicial participation, the judge is better
able to maintain his role as a neutral arbiter.
Having not participated in nor, indeed, in some
courts, even directed the negotiations, the trial
judge has no vested interest in seeing the plea
agreement effectuated. Second, because the judge
has maintained his neutrality, the trial judge is in
a better position to determine the voluntariness of
the plea, as required by GCR 1963, 785.7(2). Third,
the judge will retain control over sentencing. If
the judge feels that the agreement reached by the
defendant and government attorney will serve the
interests of justice, he may accept the agreement
or recommendation. If, however, the judge, in an
exercise of his discretion, finds that the bargain is
not appropriate, he is free to reject the plea. Thus,
the judge's sentencing discretion is unhampered.
Fourth, this system eliminates the impropriety of
judicial negotiations with either the defendant or
the government's attorney. Perhaps just results
were reached during such negotiations, but the
appearance of covert activity which resulted from
off-the-record discussions destroys a defendant's
faith in the judge's neutrality, as well as the
public's respect for the law. Fifth, the elimination
of covert negotiations and the greater certainty
infused in the guilty-plea proceedings by bringing
sentencing bargaining out into the open should
reduce appeals for post-conviction relief on the
basis of the bargaining. Also, review of the appeals
that are taken will be facilitated by the record
made of the proceedings. Finally, the coercive
atmosphere of the bargaining process will be mini-
mized.

The model for limited judicial participation in
plea-bargaining which we adopt today envisions
the judge's role to be similar to that espoused in

several proposed models.[12] It is quite similar to Federal Rule of Criminal Procedure 11(e)(1)-(4), except that under our system, when the judge rejects the recommended sentence, the defendant may affirm or withdraw his plea, whereas under the federal system, the defendant does not have the option to withdraw the plea.

We believe that the procedures we adopt today will encourage a higher quality of justice and greater faith in the judicial system.

## VI. APPLICATION

The retroactive effect of this opinion is limited as hereinafter described. Some of the practices proscribed in this opinion have resulted in disparate Court of Appeals opinions. Other practices have been proscribed because of fairness and public policy, rather than a specific rule of law.

The rules articulated in this opinion will be applied: (1) to all future trial court decisions where the defendant moves the sentencing court to vacate the sentence and withdraw the plea; (2) to all appeals or applications for leave to appeal filed prior to the date of this opinion where the issue is properly raised; and (3) to the two instant cases.

## VII. CONCLUSION

Applying these principles to the facts before us, we affirm the Court of Appeals decision in *People*

[12] ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, § 3.3 (Approved Draft, 1968) (the 1979 revisions of the ABA standards have modified the § 3.3 total ban on judicial participation to allow a judge a limited role, see ABA Standards for Criminal Justice (2d ed), Pleas of Guilty, Standard 14-3.3; ALI, Model Code of Pre-Arraignment Procedure, § 350.3(1) (1975); Handbook of the National Conference of Commissioners on Uniform State Laws, Uniform Rules of Criminal Procedure, Rule 441(a) (1974).

*v Briggs.* In this case, the prosecutor offered to recommend a specific sentence. Although the prosecution kept his promise, and the judge cautioned the defendant that the court was not bound by the recommendation, we find that the court must offer the defendant an opportunity to affirm or withdraw his plea. This will ensure that his guilty plea is grounded on a complete understanding of its consequences. The Court of Appeals decision is therefore affirmed.

In *People v Killebrew,* the trial judge initiated plea negotiations with the defendant. We find that the coercive atmosphere fostered by this type of judicial participation in the plea-bargaining process renders the defendant's subsequent guilty plea involuntary. The judicial role in the bargaining process is limited to accepting or rejecting an agreement proffered by the parties. The Court of Appeals decision is therefore reversed, and the case is remanded to the trial court.

KAVANAGH and LEVIN, JJ., concurred with WILLIAMS, J.

COLEMAN, J., concurred with WILLIAMS, J., as to *Killebrew* only, and did not take part in the decision of *Briggs.*

RYAN, J. *(concurring in part, dissenting in part).* I agree with by brother WILLIAMS that in *Killebrew* the defendant's conviction must be reversed because of the inappropriate involvement of the trial court in the plea-bargaining process. I share my brother's concerns about judicial involvement in the business of sentence bargaining and subscribe fully to his disapproval of the practice.

I dissent in *Briggs,* however, from my brother's new policy conferring upon defendants the right to

withdraw a guilty plea when the mere recommendation of the prosecutor concerning a sentence is not adopted by the trial court.

I do not agree that we ought to adopt a policy which affords a defendant the right to withdraw an otherwise valid guilty plea simply because his hope that the court would accept the prosecutor's sentence recommendation is not realized.

This new policy introduces into our jurisprudence for the first time, and insofar as I can determine the first time anywhere, the proposition that a valid guilty plea may be withdrawn as of right despite the fact that no promise has been made to the defendant as to the sentence which will be imposed, and the only promise made—that a recommendation will be made—is kept.

The essence of the Court's reasoning seems to be that the trial court's advice to the accused, that the court is not bound by the prosecuting attorney's sentence recommendation, is essentially meaningless. The Court claims that such advice is often viewed as mere "ceremonial incantation". If that is true, then it is likewise true of *all* of the advice to an accused required to be given under GCR 1963, 785.7, and we are duty-bound to scrap the rule.

Instead, however, by virtue of today's holding, we are requiring that GCR 1963, 785.7 be once again amended and necessarily lengthened. It will now become necessary for the trial judge to explain to an accused the difference between a "sentence bargain" and a "sentence recommendation" and then ascertain that the accused understands the difference. It will be further necessary to determine whether, understanding the difference, the accused wishes to waive his "right" to withdraw his otherwise valid guilty plea. It takes little pres-

cience to foresee the imaginative new grounds for appeals of guilty pleas which this aspect of today's decision will generate for presentation to our appellate courts. First among them, I suspect, will be the claim that other statements of caution, and warning, and advice by the court to the accused, made pursuant to GCR 1963, 785.7, are mere "ceremonial incantations" which are not taken seriously by anyone, including the Supreme Court.

I would continue to treat a prosecutor's sentence recommendation as what it is: a recommendation, and forbear writing into our jurisprudence confirmation of the belief widely held by defendants in criminal cases that, in the sentence bargaining scenario, the trial judge and the prosecutor are essentially on the same "team" and that the warnings and assurances of the trial judge are to be regarded as no more credible or binding than those of the prosecutor.

I would therefore reverse in both *Killebrew* and *Briggs.* In view of the majority decision to the contrary, I would apply the rules announced in these cases to these defendants and to cases in which pleas of guilty are accepted after the release of this opinion.

FITZGERALD, C.J., concurred with RYAN, J.

RILEY, J., took no part in the decision of this case.

## ORDER

Entered on February 18, 1983.—REPORTER.

On order of the Court, the motion for clarification of this Court's opinion in this matter and the petition by the Michigan Judges Association for leave to intervene as a party plaintiff for the

purpose of seeking rehearing or for leave to file a brief amicus curiae are considered. On further consideration we have determined that the rules announced in *People v Killebrew* and *People v Briggs* are to be applied only to those two cases and to cases in which guilty pleas have been accepted after the January 11, 1983 release of the opinion in *People v Killebrew* and *People v Briggs.* In all other respects the motions are denied.

RYAN, J., states as follows:

I continue to adhere to my dissent in this matter with the exception of my statement that the rules announced in these cases should be applied to these two defendants and to cases in which pleas of guilty are accepted after the release of this opinion because the Court now subscribes to that view.

CAVANAGH, J., not participating in *People v Killebrew.*