COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

AFTAB ZAMAN,

Defendant-Appellant.

UNPUBLISHED
January 25, 2018

No. 335742
Chippewa Circuit Court
LC No. 15-001888-FH

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant pled guilty to 12 counts of distributing or promoting child sexually abusive material, MCL 750.145c(3), and 12 counts of using a computer to commit a crime, MCL 752.796 and MCL 752.797(3)(d). Defendant was sentenced to four years, seven months and 12 days to seven years' imprisonment for each distribution or promotion conviction, to be served concurrently but consecutive to sentences of four years, seven months to seven years' imprisonment for each computer crime conviction, which were to be served concurrently. Defendant was ordered to pay $7,775 in restitution. He appeals by delayed leave granted.[1] For the reasons set forth below, we vacate his conviction and remand to allow defendant to plead guilty in accordance with the previous plea agreement reached between the prosecution and defense, but improperly rejected by the trial court.

I. FACTS AND TRIAL COURT PROCEDURE

The Chippewa County Sheriff's Department received information that child pornography was being downloaded to a particular IP address in Chippewa County. Through subpoenaed records, it was learned that the IP address was attributable to defendant, who was living in Sault Ste. Marie, Michigan as an active member of the United States Coast Guard. The Sault Ste. Marie police department executed a search warrant of defendant's apartment and confiscated "external hard drives, memory sticks, flash drives, and cell phones." During an interview with the Sault Ste. Marie police, defendant admitted to looking at child pornography while surfing the

---

[1] *People v Zaman*, unpublished order of the Court of Appeals, issued December 28, 2016 (Docket No. 335742).

internet and stated that he knew it was wrong but he got caught up in the thrill of viewing the materials. A forensic examination of defendant's computer produced several pictures and dozens of videos depicting underage children performing various sexual acts.

Defendant was charged with 12 counts of distribution or promotion of child sexually abusive material.[2] The Information did not identify the dates of the individual charges nor describe the images that served as the basis for each, or any, of the 12 separate counts. In the same Information, defendant was also charged with 12 counts of using a computer to commit a crime. These counts also contained no information concerning the dates of these offenses, nor what images were allegedly distributed or promoted by using a computer. Each count of using a computer to commit a crime listed the statutory penalty as 7 years and/or $5000; reimburse government for expenses incurred in relation to violation in manner indicated by MCL 769.1f (see MCL 752.797(7). A consecutive sentence may be imposed for the underlying conviction.

On October 5, 2015, the prosecution and defendant entered into a written and signed plea agreement under which defendant would plead guilty to all 24 counts. The plea agreement, like the Information, did not identify the dates of the crimes nor what images were the bases for each charge. The plea agreement states "that sentencing shall be concurrent."

The parties appeared before Judge James Lambros on November 3, 2015, to enter the plea. In setting forth the terms of the plea, defense counsel noted that as part of the agreement "the prosecution withdrew the plea for consecutive sentencing." Both defense counsel and the prosecutor advised the court that there were more than sufficient transmissions of images such that defendant's computer charges did not need to rest on the same factual basis as the distribution charges; therefore, the distribution charges were not the "underlying conviction[s]" to the computer charges. The trial court, apparently confusing a charge plea bargain with a sentence plea bargain, stated that the prosecutor only has the authority to make sentencing *recommendations* and so could not bind the court to forego consecutive sentencing. After the attorneys expressed some confusion, the court took a brief recess and met with counsel in chambers.

On February 29, 2016, the parties entered into a signed "Addendum to Plea Agreement." The addendum, which was filed with the court, set forth the particular video upon which the charge was based. Significantly, each count referred to a video not referenced in any other count, i.e. there were 24 different videos referenced—one for each count. As a result, none of the distribution charges served as the "underlying conviction" for any of the computer use charges. MCL 752.796 provides that a person may be convicted of illegal use of computers, "regardless of whether the person is convicted of committing . . . the underlying offense." The intent of the agreement was clearly to structure the charges so that defendant would be pleading guilty to 24 charges but in a manner that would not provide for the possibility of consecutive sentencing.

---

[2] The charge of distribution was based upon the allegation that after downloading the images, defendant made them available for others to view on a peer-to-peer website.

A second plea proceeding took place on March 29, 2016 based on the agreement as set forth in the addendum. The court indicated that it had reviewed the plea agreement including the addendum. Defendant indicated he was pleading to the 24 charges. The prosecutor, for reasons that are not exactly clear, told the court that the prosecution had agreed to recommend consecutive sentences. Defense counsel corrected him, stating that the prosecution had agreed to structure the plea agreement so that there would be no "underlying offenses" and so, in his words, "this plea agreement as a matter of law would bar consecutive sentencing." The court sought clarification from the prosecutor who concurred with defense counsel, stating,"[I]f there's an underlying conviction there can be a consecutive sentence. So if there's not an underlying conviction then according to the charge code, there can't be consecutive sentencing." The trial court responded:

> I guess if that's the way you want to prosecute it . . . that's fine. It just didn't appear that way. When there are 24 counts logically would make sense that one would line up with two, three would line up with four, five would line up with six and so on. I mean that's how this charging document [read].

After some additional discussion, the trial court stated:

> Okay. I don't think I'm willing to accept that plea. I just don't think I'm going to accept that plea because now we're manipulating this so it looks like we're pleading to 24 counts and that's not what's going on here.
>
> I don't like that. I've said from the beginning, I don't like that. I'm not willing to accept this plea like that. Now we're just playing games for legal maneuvering when in actuality we're trying to plead to 24 counts and that's not what we're doing here. This is manipulation and I don't like it.
>
> He's charged with 24 counts. If he wants to plead to 24 counts that originally charged, you can do that. Don't come back here and plead to 24 counts that are different manipulating the set of circumstances so that it looks like we're doing one thing when we're not really doing that. . . .
>
> * * *
>
> [This agreement is] only to tie the Court's hands so that it can't sentence the way – you're kind of getting what you want [defense counsel] but we're playing games with the charges because we're not pleading to 24 different counts. Twelve of which were not charged in the beginning. I'm not accepting that plea. You can negotiate further if you want to. I'm sick of this!

Two days later on March 31, 2016, a third plea proceeding began but was continued to the following day, April 1, 2016. At this proceeding, defendant pleaded guilty to the charges identified in the manner the trial court stated it would require, i.e. each distribution count was linked to an underlying computer use count.

Sentencing took place on May 24, 2016. The guidelines recommended a minimum sentence of 19 months to 38 months on each charge. The prosecutor asked the trial court to

-3-

sentence "at the lower end of the guidelines, with the sentences being concurrent." The trial court instead sentenced defendant on each charge to a term of 55.4 months to 7 years with the computer use sentences to be served consecutively to the distribution sentences.[3]

## II. PLEA

On appeal, defendant argues that trial court impermissibly interfered with the prosecution's charging decision by refusing to accept the original plea agreement negotiated between himself and the prosecuting attorney.[4] We agree.[5]

"It is well settled that 'the decision whether to bring a charge and what charge to bring lies in the discretion of the prosecutor.' " *People v Conat*, 238 Mich App 134, 149; 605 Nw2d 49 (1999) (citation omitted). "The prosecutor is a constitutional officer whose duties are as provided by law," therefore, when the prosecutor performs those duties on behalf of the people of the state, it is an act of the executive branch of the government. *Genesee Prosecutor I v Genesee Circuit Judge*, 386 Mich 672, 683-684; 194 NW2d 693 (1972), citing Const 1963, art VII, § 4. "A circuit judge does not enjoy supervisory power over a prosecuting attorney . . . [and] may not properly substitute his judgment for that . . . of a prosecuting attorney as if he were . . . acting in a supervisory capacity with respect to the prosecuting attorney." *Genesee Prosecutor II v Genesee Circuit Judge*, 391 Mich 115, 121; 215 NW2d 145 (1974).

In the instant case, the trial court improperly "engaged in the negotiation of the [plea] bargain itself and failed to remain a "detached and neutral judicial officer." *People v Killebrew*, 416 Mich 189, 205; 330 NW2d 834 (1982). In *Killebrew*, the Michigan Supreme Court emphasized that the "judicial role in the negotiation process must be limited for several reasons—to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispense of justice." *Id.* at 202. The Supreme Court again emphasized this in *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993) where it stated:

> The coercive potential of judicial involvement is obvious, and stems from the overwhelmingly advantageous bargaining position of the judge. Equally important is the fact that [t]he perception of the judge as a neutral arbiter must suffer when the judge descends from the bench to barter with the defendant over

---

[3] The minimum sentences are each approximately 18 days short of the maximum-minimum term allowed under *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972).

[4] We note that the prosecution has not appeared as appellee or filed a brief in this appeal.

[5] "A trial court's decision to accept or reject a plea is reviewed for an abuse of discretion." *People v Plumaj*, 284 Mich App 645, 648; 773 NW2d 763 (2009). A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). However, "[q]uestions of law, including the interpretation of court rules, are reviewed de novo on appeal." *Plumaj*, 284 Mich App at 648.

the terms of the deal he advocates. [*Id*. at 281 (quotation marks and citation omitted).]

Further, "the decision to prosecute under one statute or another or to prosecute at all, is an exclusively executive function, vested within the discretion of the prosecutor." *Killebrew*, 416 Mich at 199 n1.

To be clear, a trial judge may decline to follow a prosecutor's *sentencing* recommendation, and may even refuse to follow a sentence agreement so long as defendant is provided a right to withdraw his plea. *Id*. at 207-210. However, a judge may not reject a *charge* bargain to which both sides agree unless he finds that it is not voluntary, knowing, or accurate. The court rules provide clear direction on this issue. Specifically, MCR 6.301(B) provides that the consent of the court is required when the defendant enters a nolo contendere, a situation not applicable to this case as defendant purported to enter a guilty plea under the plea agreement.[6] MCR 6.301(C) provides for situation where the consent of both the prosecutor and the court is required for a plea, and these are clearly not implicated in the present case.[7] Further, MCR 6.302(A) provides that a trial court "may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate." "If the defendant pleads guilty, the court, by questioning the defendant, must establish support for a finding that the defendant is guilty of the offense charged or the offense to which the defendant is pleading." MCR 6.302(D). Not only did the trial court interfere with the prosecutor's charging decision in this case, it also failed to follow the mandate of the court rules in rejecting defendant's plea. Nothing in the court rules permits a trial judge to reject a plea simply because he does not like the plea agreement.[8] Rather, the only ground to do so is a finding that the plea was not voluntary, knowing or accurate.

Here, it is clear that the plea was understanding and voluntary and the trial court did not suggest otherwise. The trial court did state that it did not believe the plea was accurate, though it stated no reasons for this conclusion other than that the agreement required a change in the charges, a phenomenon that is a necessary element of all charge plea bargains. For example, though the proofs may unequivocally demonstrate that the defendant had a gun during a robbery, the parties are permitted to amend the charges to dismiss the armed robbery charge and instead

---

[6] Prior to amendment of the court rules in 1989, the relevant rule (MCR 6.101(F)) did require trial court consent for a guilty plea to be entered. See *People v Ott*, 144 Mich App 76; 372 NW2d 694 (1984).

[7] MRC 6.302(C) requires consent of both the court and the prosecution before a defendant may enter a plea of guilty but mentally ill or not guilty by reason of insanity.

[8] To the degree a trial court may reject a charge bargain such authority is greatly limited. As stated in *Genesee Prosecutor II*, 391 Mich at 121, "a circuit judge does not enjoy supervisory power over a prosecuting attorney . . . [and] may reverse or revise [his] decisions only if it appears from the record that they have abused the power confided to them." Moreover, in 1989, the court rules were revised to delete the provision that guilty plea may only be entered with the consent of the court.

charge unarmed robbery for purposes of the plea agreement. The trial court may not reject this plea because of his determination to sentence defendant to the much longer sentence imposed for armed robbery. This flexibility is fundamental to a system that permits plea bargains and has been approved of innumerable times.[9] *People v. Reagan*, 395 Mich 306, 314, 235 NW2d 581, 585 (1975). The court rules also address this phenomenon in MCR 6.302(D) which provides that the court "by questioning the defendant must establish support for a finding that the defendant is guilty of the offense charged *or the offense to which the defendant is pleading*." In this case, the trial judge refused to question the defendant to establish support for the plea and the record indicates that support for such a plea did exist.

As noted, the trial judge's repeated-expressed displeasure at being deprived the opportunity to impose a consecutive sentence due to the charge bargain, is no more relevant than is a trial judge's displeasure at being deprived the opportunity to impose a life sentence when a defendant, charged with armed robbery, enters into a plea bargain in which he pleads guilty to unarmed robbery. The trial judge's comments that "we're playing games with the charges" and "I'm sick of this," do not address whether the plea is understanding, voluntary and accurate, but rather are the trial court's criticism of the nature of plea bargaining. The trial judge may address such complaints in the context of discussions of criminal justice reform or seek modification of the court rules, but he may not unilaterally determine that the court rules will not be followed in his courtroom because he "is sick" of them.

In sum, the prosecutor and the defendant struck a lawful charge-bargain. The trial court improperly refused to accept the bargain. We vacate the judgment and remand for entry of judgment as to the bargain the court refused to accept and for resentencing.

### III. SENTENCING

Defendant also argues that the he is entitled to resentencing because his minimum sentence was an unreasonable and disproportionate upward departure from the recommended guidelines range.[10] While our decision to vacate his convictions and remand means that we need not rule on this sentencing issue, we address it as it is likely to arise again on remand.

---

[9] As the United States Supreme Court in *Santobello v New York*, 404 US 257, 260; 92 S Ct 495; 30 L Ed 2d 427 (1971), commented:

> The disposition of criminal charges by agreement between the prosecutor and accused, sometimes loosely called 'plea bargaining' is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

[10] This Court reviews a trial court's imposition of upward departure sentences for an abuse of discretion. *People v Steanhouse*, ___ Mich ___ ; ___ NW2d ___ (2017) (Docket Nos. 152671, 152849, 152871 to 152873, and 152946 to 152948); slip op at 4. "[A] given sentence can be said

Defendant's sentence represents a substantial departure from the sentencing guidelines of 19 to 38 months. Perhaps more to the point is the fact that the minimum sentence imposed is only days less than the highest one that could have been imposed.[11]

"[A] departure sentence may be imposed when the trial court determines that 'the recommended range under the guidelines is disproportionate, in either direction." *People v Steanhouse (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2017); slip op at 2-3. "An appellate court must evaluate whether reasons exist to depart from the sentencing guidelines and whether the *extent* of the departure can satisfy the principle of proportionality." *Id*. at 3.

"The first inquiry in our reasonableness review is whether there were 'circumstances that are not adequately embodied within the variables used to score the guidelines.' " *Id*. citing *People v Milbourn*, 435 Mich 630, 659-600; 461 NW2d 1 (1990). In this case, there clearly was not. In sentencing defendant, the trial court commented that there was "simply no room for leniency" because of the nature of the activity and the "volume of images depicted" justified an upward departure. However, this reasoning is already accounted in the scoring of offense variable (OV) 13, MCL 777.43, which deals with continuing pattern of criminal behavior. It provides that 25 points be scored where "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." Defendant was scored 25 points under the OV based on the number of times he downloaded and viewed the child pornographic materials.

Apart from its articulation that the crime was serious in nature and that the society must be protected from dangerous offenders, the trial court did not consider some of the nonexhaustive factors that are relevant in determining whether a sentence is proportionate. See *People v Lawhorn*, 320 Mich App 194, 207; ___ NW2d ___ (2017). Specifically, the trial court did not consider that defendant did not have any relationship or contact with the victims, and that once he was confronted with the allegations, he immediately took responsibility for his actions, expressed remorse, and was fully cooperative with law enforcement. According to defendant's presentence investigation report, this was defendant's first exposure to the criminal justice system. The trial court referenced none of these facts or other factors relevant to individualized sentencing. Indeed, the sentencing judge appears to have completely abandoned the notion of individualized sentencing in its sentencing remarks, instead seeming to adopt the position that anyone accused of this crime should be sentenced to the maximum permissible regardless of any other considerations. Therefore, we conclude that it abused its discretion by failing to provide

---

to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1(1990), overruled by statute as recognized in *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011).

[11] See *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972).

adequate reasons for the guideline departure and that the sentences imposed violated the principle of proportionality. *Steanhouse (On Remand)*, ___ Mich App at ___; slip op at 5.[12]

## IV. RESTITUTION

Defendant argues that the trial court erred in awarding restitution in the amount of $7,775 to the police department for the forensic examination performed on defendant's computer. We agree.[13]

The purpose of restitution is "to enable victims to be compensated fairly for their suffering at the hands of convicted offenders." *People v Peters*, 449 Mich 515, 526; 537 NW2d 160 (1995). "Crime victims retain both statutory and constitutional rights to restitution." *People v Cross*, 281 Mich App 737, 739; 760 NW2d 314 (2008). "The Crime Victim's Rights Act [CVRA], MCL 780.751 *et seq.*, determines whether a sentencing court's restitution order is appropriate." *People v Newton*, 257 Mich App 61, 68; 665 NW2d 504 (2003). MCL 780.766 provides in pertinent part:

> when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. . . . [MCL 780.766(2).]

A "victim" includes a "governmental entity, or any other legal entity that suffers direct physical or financial harm as a result of a crime." MCL 780.766(1).

---

[12] Defendant also argued in his brief that even if the trial court had the authority to impose consecutive sentences, it abused its discretion by doing so. Since we are remanding for enforcement of a plea agreement under which consecutive sentences are not an option, the issue is moot. However, we take the opportunity to note that we recently addressed the imposition of discretionary consecutive sentences in *People v Norfleet*, 317 Mich App 649, 665; 897 NW2d 195 (2016) lv den 500 Mich 1009 (2017). We held that:

> While imposition of more than one consecutive sentence may be justified in an extraordinary case, trial courts must nevertheless articulate their rationale for the imposition of each consecutive sentence so as to allow appellate review. As the *Milbourn* Court aptly stated, "Discretion, however, is a matter of degree, not an all or nothing proposition." *Milbourn*, 435 Mich at 664, 461 NW2d 1. Additionally, we believe that requiring trial courts to justify each consecutive sentence imposed will help ensure that the "strong medicine" of consecutive sentences is reserved for those situations in which so drastic a deviation from the norm is justified.

[13] Because defendant did not raise this issue so our review is for plain error affecting substantial rights. *People v Parker*, 288 Mich App 500, 509; 795 NW2d 596 (2010).

-8-

We have ruled that "the general cost of investigating and prosecuting criminal activity is not direct 'financial harm as a result of a crime.' " *Newton*, 257 Mich App at 69-70. Here, defendant's crimes did not, in and of themselves, cause the Charlevoix County Sheriff's Department financial harm. Rather, it appears the forensic examination was part of "the ordinary costs of investigation or operation." *People v Wahmhoff*, ___ Mich App ___, ____ ; ___ NW2d ___ (2017) (Docket No. 330211); slip op at 6. Accordingly, the Charlevoix County Sheriff's Department could not recover those costs as a "victim" under the CRVA. *Id*.

Given our disposition of this issue, we need not address whether defendant was afforded the effective assistance of counsel when his attorney failed to object to the restitution award.

CONCLUSION

We vacate defendant's convictions and remand for entry of the plea pursuant to the agreement between the prosecution as set forth in the plea agreement addendum referred to above. Proceedings on remand shall be conducted by a different judge because we are "convinced that the judge would have difficulty setting aside [his] previously expressed views and justly resolve the issue at a subsequent hearing." *People v. Pillar*, 233 Mich App. 267, 271, 590 NW2d 622, 624-625 (1998). See also, *Santobello v New York*, 404 US 257, 263; 92 S Ct 495; 30 L Ed 2d 427 (1971) (stating that when "the circumstances of this case require . . . that there be specific performance of the agreement on the plea . . . petitioner should be resentenced by a different judge"). We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola