# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LESTER JOSEPH DIXON, JR.,

Defendant-Appellant.

UNPUBLISHED
April 27, 2017

No.  331113
Kalamazoo Circuit Court
LC No.  2015-001212-FH

Before:  BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

Defendant, Lester Joseph Dixon, Jr., appeals as of right from his jury trial conviction of second-degree fleeing and eluding, MCL 257.602a(4)(b).  The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to a prison term of 19 months to 10 years. Defendant contends on appeal that he was denied effective assistance of counsel during the plea-bargaining process.  We disagree.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Officer Brett Bylsma of the Kalamazoo Police Department testified at defendant's trial that, on the evening of August 7, 2015, he was sitting in his marked patrol car monitoring a downtown Shell gas station when a white, 2014 Chevrolet Malibu parked at the station drew his attention.  A check of the license plate number revealed that that the registrant of the car was defendant's mother.  Further investigation revealed that defendant, whom the Officer believed to be driving the car, lived with his mother upon occasion, did not have a valid driver's license, and was the subject of a valid arrest warrant.  Officer Bylsma approached the Malibu and looked inside to satisfy himself that defendant was the driver.  Upon doing so, he observed the passenger smoking what he believed to be marijuana.  Officer Bylsma said that he awaited backup to assist in arresting defendant, until it appeared that defendant was going to drive away, at which point the officer activated his patrol car's siren and overhead lights.  Defendant appeared to hesitate, but then entered traffic and drove away, with Officer Bylsma in pursuit.  Officer Bylsma testified that he abandoned the pursuit out of safety concerns because defendant was driving at speeds approaching 100 miles per hour through a 35-mile-per-hour residential area.  Police later arrested defendant, and the prosecutor charged him as indicated.

On November 3, 2015, the prosecution filed two motions in limine, only one of which is relevant to the instant appeal.  To show defendant's motive for fleeing the Shell station, the

-1-

prosecution asked the court to permit introduction under MRE 404(b) of evidence indicating that, on the night of the events at issue, there existed a valid warrant for defendant's arrest. To establish that defendant frequently drove his mother's car, the prosecution sought to admit police reports from defendant's 2006 and 2007 convictions for fleeing and eluding showing that, when police stopped defendant, he was driving his mother's car. In answer to the prosecution's motion, defendant observed that only one of the reports indicated that he was driving his mother's car, and argued that one incident does not establish a pattern of frequent use. In addition, he argued that both convictions were too remote to be relevant to a determination of whether he had "recently fled and eluded the police[,]" and that their probative value was significantly outweighed by their prejudice arising from their use as propensity evidence. Accordingly, defendant asked the court to suppress the introduction at trial of his prior fleeing and eluding convictions.

On November 9, 2015, defendant filed a motion in limine arguing in part that defendant would be irreparably prejudiced by evidence that defendant had "a valid warrant for a parole violation out of Lansing tether[,]" that "[t]he prior charge listed on Defendant's warrant was fleeing and eluding[,]" and that defendant "was on parole at the time of this incident." Accordingly, defendant asked the court to order the prosecution and any prosecution witnesses not to introduce evidence relative to defendant's parole violation, the warrant for his arrest, and the charge listed on the warrant.

The trial court held a hearing on the motions on November 18, 2015. The trial court initially rendered its decision on the record, granting defendant's motion in part and denying it in part. Specifically, as it relates to this appeal, the trial court allowed the prosecutor to introduce evidence that defendant had a warrant for his arrest, but prohibited the prosecutor from introducing evidence regarding the type of warrant or the underlying charge listed. Additionally, the trial court ruled that the prosecution could not introduce police reports of incidents involving defendant's prior use of his mother's car because of their remoteness in time from the incident at issue. The trial court subsequently entered corresponding written orders.[1]

At the conclusion of the hearing, the prosecutor placed on the record his current plea offer to reduce the charge from second- to third-degree fleeing and eluding, and to agree to allow defendant to serve his sentence in the county jail. The prosecutor also noted that the trial court had extended a *Cobbs*[2] agreement to defendant, offering to delay defendant's sentence so that defendant's parole violation could be "handled." The trial court would then conduct sentencing and allow the parties to argue everything from credit for time served to the maximum one year in county trial. According to the prosecutor, defendant had previously indicated that he would not accept the offer. The trial court asked defendant to confirm that he had formally rejected these

---

[1] The trial court issued two orders. The first order disposed of defendant's motion in limine, while the second prohibited the prosecution from entering into evidence at trial police reports of defendant's prior fleeing and eluding convictions. The court entered the latter order on December 4, 2015, the day of the final settlement conference.

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

offers. Before defendant could answer, defense counsel stated, "[j]ust a minute, your Honor. He – he doesn't understand a 404(b) is coming in." The trial court gave defense counsel a moment to confer with defendant, and afterwards, counsel said, "My client understands your ruling now, and he does want a trial. He does not want to take advantage of the offer."

The matter proceeded to trial on December 8, 2015, with the parties stipulating that defendant had a valid warrant at the time of the alleged offense, a prior conviction for second-degree feeling and eluding, and two prior convictions for third-degree fleeing and eluding. The jury found defendant guilty of all charges, and the trial court sentenced him as noted above on January 4, 2016.

On March 30, 2016, defendant moved through his court-appointed appellate attorney for a new trial in the trial court on the basis that he rejected the November 18, 2015 plea bargain because his trial counsel mistakenly led him to believe that if he went to trial, the court would suppress his prior fleeing and eluding convictions.

At a June 16, 2016 hearing on his motion, defendant testified that his trial counsel was confused about the law. He said he asked his attorney if the court would allow the prosecution to introduce his prior convictions for fleeing and eluding at trial, and she told him that she did not know. He testified that she told him at the November 18, 2015 hearing that his prior convictions were not coming in. It was because of this information, defendant asserted, that he rejected the November 18, 2015 plea offer. Defendant further stated that he did not learn his convictions were coming in until the December 4, 2015 settlement conference, and that he did not take a plea offer at that time because he did not want to "give up" his right to appeal his rejection of the November 18, 2015 offer. Defendant insisted that he did not stress his innocence or tell trial counsel he would not take a plea offer, and stated that counsel's testimony that he wanted her "to go back and get plea deals" belies her assertion that he was not interested in an offer. In fact, defendant testified, he told his attorney "from day one" that he would accept an offer that allowed him to serve his sentence in the county jail.

Contrariwise, defendant's trial counsel testified that she understood that the elements of second-degree fleeing and eluding required proof beyond a reasonable doubt of prior convictions for fleeing and eluding, and that she discussed that requirement with her client more than once. She acknowledged that she filed a motion in limine and answered affirmatively when asked if she filed a brief with the motion in which she asked the court to suppress defendant's prior convictions.[3] She further testified that she filed the motion knowing that the trial court would deny her request and she told defendant they would lose the motion. Nevertheless, experience

---

[3] To clarify, and notwithstanding testimony to the contrary, the brief in which defendant argued for suppression of his prior fleeing-and-eluding convictions was attached to his answer to the prosecution's motion in limine to admit certain evidence under MRE 404(b), not to defendant's motion in limine. That defendant labelled the brief "in support of the motion" may have prompted some confusion. However, trial counsel filed the brief with defendant's answer four days after filing the motion, and even a cursory review of the contents of the brief reveals that it is unrelated to defendant's motion, but correlates to the prosecution's MRE 404(b) request.

had taught her that filing even a frivolous motion could spur a better offer from certain prosecutors, and she believed that her motion had spurred the offer defendant now claims he would have accepted. She said she believed that defendant became confused at the November 18, 2015 hearing, but she did not realize he was confused until the December 4, 2015 settlement conference, at which point it became evident that defendant thought the trial court had excluded the fact that he had prior convictions for fleeing and eluding. Counsel testified that she clearly understood the trial court to have excluded specific details of defendant's convictions only.

Counsel said that defendant wanted her to "get him offers," opining that it made him confident that he was going to win his case, even though she told him he had only a 50/50 chance at trial. Defendant's trial counsel noted that the prosecution had made offers to defendant five separate times, with the one placed on the record at the November 18, 2015 hearing being the best, but defendant had rejected every offer on the grounds that he was innocent and would not plead guilty to something that he did not do. He said he wanted to be in a position to fight his parole violation, and thought that pleading or being found guilty of the charge at issue would result in a separate parole violation and severe sanctions.

The prosecution argued at the hearing that it was clear from the transcript of the November 18, 2015 hearing that defendant had rejected the offer placed on the record prior to the hearing, i.e., before any alleged confusion had arisen. The prosecution further noted that the record completely belied defendant's representations that he would have accepted a plea offer, even after defendant clearly understood that the prosecution would admit evidence at trial of his prior convictions for fleeing and eluding. The prosecution observed that it was "nonsensical" to think that a defense attorney with a decade of experience would not realize that a degreed offense required evidence of prior such offenses.

After taking the matter under advisement, the trial court entered an order on June 30, 2016, finding that the conduct of defendant's trial attorney did not fall below an objective level of reasonableness and that, even if it had, the court was not convinced that there was a reasonable probability that the outcome of the proceedings would have been different. The court noted that defendant remained adamant about his innocence throughout the proceedings, that he never expressed his confusion to the court prior to trial, and that he did not request a re-offering of the plea deal after he understood that evidence of his convictions would come in at trial. It was not until a jury convicted him of all charges that he claimed continued confusion about his prior convictions being admitted at trial. Concluding that defendant could not establish deficient performance or prejudice, the trial denied his motion for a new trial.

II. ANALYSIS

Defendant argues that he received ineffective assistance of trial counsel during the plea bargaining process. Specifically, he contends that he would have accepted the prosecution's plea offer of November 18, 2015, if he had known that his prior fleeing and eluding convictions would be admitted at trial.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "The trial court's factual findings are reviewed for clear error, while its constitutional

determinations are reviewed de novo." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Clear error exists if the reviewing court is left with the definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin* (*On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000), citing *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). This two-pronged test also applies to claims of ineffective assistance of counsel during the plea bargaining process. *Lafler v Cooper*, 566 US 156, 162-163; 132 S Ct 1376; 182 L Ed 2d 398 (2012) (quotation marks and citation omitted). However, where a defendant alleges ineffective assistance relative to the rejection or acceptance of a plea, establishing the prejudice prong of the *Strickland* test requires the defendant to demonstrate that,

> but for the ineffective assistance of counsel there is a reasonable probability . . . that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances[], that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id.* at 164.]

Accordingly, for the instant defendant to succeed in his claim, he must initially establish that his trial counsel's performance was "below an objective standard of reasonableness under prevailing professional norms," *Sabin*, 242 Mich at 659, and that, but for this deficiency, he would have accepted the November 18, 2015 plea deal, *Lafler*, 566 US at 164. The proper remedy for ineffective assistance at the plea bargaining stage is for the prosecution to re-offer the plea agreement, and, if defendant accepts, the trial court could exercise its discretion regarding whether to resentence. *Id.* at 171. We agree with the trial court that defendant has not established either prong.

With regard to the performance prong, defense counsel testified that she was not confused about the law. She knew defendant's prior convictions for fleeing and eluding would be admitted at trial as elements of the charged offense and that the trial court would deny her request to exclude the prior convictions, but she asked anyway in an effort to obtain a favorable offer for defendant. The trial court found counsel's testimony credible, acknowledging such filings to be a common practice defense attorneys use to bring about more favorable plea deals, and speculating that it succeeded in this case by eliciting the deal that defendant now claims he would have taken, but for counsel's alleged ineffective assistance. Additionally, defense counsel testified that she was unaware that defendant was confused regarding the admissibility of his prior fleeing and eluding convictions at the motion hearing, but became aware of defendant's confusion at the settlement conference and clarified to him that those prior convictions would be admitted at his trial. Defendant's testimony confirms that his confusion was resolved at the settlement conference, four days before trial. In light of this record, and giving due regard to the trial court's opportunity to assess the credibility of the witnesses who appeared before it, MCR

-5-

2.613(C), we cannot say that the trial court clearly erred by finding that trial counsel's performance did not fall "below an objective standard of reasonableness under prevailing professional norm." *Sabin* (*On Second Remand*), 242 Mich App at 659.

With regard to the prejudice prong, we agree with the trial court that the record does not support defendant's contention that, but for trial counsel's allegedly deficient performance, there is a reasonable probability that defendant would have accepted the plea deal from November 18, 2015. *Lafler*, 566 US at 164. The record amply supports that defendant maintained his innocence and did not evince an intent to accept any plea offer. In an October 23, 2015 letter to defense counsel, defendant stated, among other things, that his "mind is already made up about going to trial," that he was "prepared for trial[,]" and that he did not see how "anyone can put [him] in that driver's seat." In addition, as the trial court noted, there is no evidence that defendant ever communicated any confusion to the court, or that, even after he knew his prior convictions would come in at trial, he sought the re-offer of any plea deal. In fact, the "Arraignment Report and Scheduling Order" notes the results of the December 4, 2015 settlement conference at which defendant's confusion was resolved as "still on for trial." Further, at the sentencing hearing, defense counsel explained as follows why defendant rejected all of the prosecution's plea offers:

> This has definitely been a challenging case in that my client has always maintained his innocence. We had a motion hearing; and at that hearing, he received a really good offer—*Killebrew*[4] and *Cobbs*—and he turned it down because he believed so strongly in his innocence.

> And it was tempting to take those offers. They were really good offers. It was really tempting. But my client has always maintained he was not driving the car; that it was not him. And so, despite those being really tempting offers, he said no to them.

Finally, in a post-conviction letter to trial counsel, defendant thanked her for her efforts and said he could not "complain about the jury verdict, it's done and over with[,]" but did not mention any plea offers.

In light of this evidence and, again, giving due regard to the trial court's credibility assessments, MCR 2.613(C), we conclude that the trial court's finding that there was not a reasonable probability that defendant would have accepted the plea offer was not clearly erroneous. *Cline*, 276 Mich App at 637; *Lafler*, 566 US at 164. Therefore, we conclude that defendant has not met his heavy burden to prove that his trial counsel performed ineffectively. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) ("Effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise."). Accordingly, we

---

[4] *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982) (holding that "sentencing concerns are appropriate subjects for plea bargaining[,]" but that the judge's role "is limited to consideration of the bargain between the defendant and the prosecutor"), aff'd 416 Mich 189 (1982).

conclude that the trial court did not err in ruling that defendant received effective of assistance of counsel.

Affirmed.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Douglas B. Shapiro