*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 16, 2023

Plaintiff-Appellant/Cross-Appellee,

v

No. 366299
Tuscola Circuit Court

JUSTEN MICHAEL WATKINS,

LC No. 21-015604-FH

Defendant-Appellee/Cross-Appellant.

Before: RIORDAN, P.J., and CAVANAGH and GARRETT, JJ.

PER CURIAM.

Plaintiff, the People of the State of Michigan, appeals as on leave granted[1] the trial court's order "striking" defendant's sentence and ordering resentencing. Defendant cross-appeals the same order, arguing that the trial court should have allowed him to withdraw his plea. Defendant entered pleas of guilty to conspiracy to teach the use of a firearm for the purpose of a civil disorder, MCL 750.528a(2), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, in exchange for dismissal of other charges in this case and in other cases. The trial court sentenced defendant to 32 months' to four years' imprisonment for teaching the use of a firearm, and it sentenced defendant to a consecutive term of two years for felony-firearm. Defendant moved to correct an invalid sentence, arguing that there were ambiguities in his plea and that he expected a minimum sentence of between zero and nine months. The trial court determined that there was a possible ambiguity in the plea, ordered defendant's sentence "stricken," and ordered resentencing. We agree with plaintiff's assertion that the trial court erred by finding a possible ambiguity in the plea and ordering resentencing; therefore, we reverse.

## I. UNDERLYING FACTS

Defendant's charges and convictions in this matter arise out of his participation, along with three other people, in entering a former Michigan Department of Corrections facility without permission and taking some items from that facility. Defendant admitted that he took at least one

---

[1] *People v Watkins*, ___ Mich ___ (2023) (Docket No. 165774).

gun into the facility, and all four participants intended to use the facility to engage in firearms training in anticipation of their later participation in "some level of civil disorder." By the time of defendant's plea hearing, he was also facing charges in two other cases, one in Washtenaw County and the other in Huron County. Defendant entered into a plea agreement in this case as part of "a global plea resolution" of all three cases.

At defendant's plea hearing, the trial court and defense counsel agreed that the trial court had made a *Cobbs*[2] evaluation and indicated that it expected to impose a minimum sentence of 32 months for teaching the use of a firearm. Defense counsel also indicated that defendant's sentencing guidelines minimum range was zero to nine months, and although the trial court had expressed that it was likely to impose a sentence of 32 months, he wished to address the length of that sentence "in an in person sentencing." Defendant further stated that "[o]bviously the sentencing is entirely within the—the discretion of the Court" and that he did not "believe it's an agreement to the 32 months" but rather "an agreement to the guidelines, and then to allow the Court to sentence appropriately." The prosecutor represented that "[i]t was not a sentence agreement," and she "was just listing out the *Cobbs*." Consistent with those representations, the parties also signed a written plea agreement form which stated that there had been a *Cobbs* evaluation of 32 months and that defendant's "estimated sentencing guideline range" was zero to nine months for the teaching use of a firearm charge.

During defendant's plea, the trial court advised him that his teaching firearms charge carried a maximum penalty of four years' imprisonment and a $10,000 fine, and defendant stated that he understood. The trial court further advised defendant:

> *THE COURT.* Now, the—the initial scoring of the guidelines it sounds like is 0 to 9 on Count 3 [teaching firearms]. The Court is not bound by that guideline range, but rather, that is—that is a consideration for the Court to take at the time of sentencing. But that doesn't necessarily mean that's what the sentence is going to be. Do you understand that?
>
> *DEFENDANT.* Yes, your Honor.
>
> *THE COURT.* Okay. Do you have any questions about this plea agreement at all?

---

[2] *People v Cobbs*, 443 Mich 276, 283; 505 NW2d 208 (1993). Pursuant to *Cobbs*, "trial judges may participate in the plea negotiation process by indicating the length of sentence that the judge, on the basis of a preliminary evaluation of the case, believes is appropriate for the charged offense." *People v Chappell*, 223 Mich App 337, 341; 566 NW2d 42 (1997). A "genuine *Cobbs* agreement" occurs when "a defendant enters a guilty plea in exchange for a specific sentence disposition by the trial court." *People v King*, ___ Mich ___, ___ n 2; ___ NW2d ___ (2023) (Docket No. 162327); slip op at 3 n 2. The trial court is not obligated to impose the sentence anticipated by its preliminary evaluation, but the defendant may withdraw the plea "if the judge later determines that the sentence must exceed the preliminary evaluation." *Cobbs*, 443 Mich at 283.

*DEFENDANT.* No, your Honor.

Defendant entered pleas of guilty to the teaching firearms charge and the felony-firearm charge. At sentencing, the parties presented arguments concerning several sentencing guidelines variables. The trial court ultimately calculated defendant's guidelines minimum range as two to 17 months. Defense counsel argued for a sentence within the guidelines, but the trial court imposed a minimum sentence of 32 months.

Defendant thereafter filed a motion to correct his sentence. Defendant generally argued, as he does on appeal, that there had either been a sentencing agreement to a minimum sentence of zero to nine months, or the plea agreement was made on the basis of an ambiguity. The trial court found "that ambiguity may exist as to whether Defendant entered into a valid sentencing agreement," so, "[t]o ensure that a correct record of the matter exists, and that no ambiguity exists regarding the sentence agreement, Defendant's sentence is stricken, and the Court remands Defendant for resentencing."

## II. STANDARDS OF REVIEW

"The trial court's discretionary decisions—including its exercise of sentencing discretion—are reviewed for an abuse of discretion," which occurs if the trial court "selects an outcome that falls outside the range of reasonable and principled outcomes." *People v Odom*, 327 Mich App 297, 303; 933 NW2d 719 (2019). A trial court's decision on a motion for resentencing is discretionary and reviewed for an abuse of that discretion. See *People v Puckett*, 178 Mich App 224, 227; 443 NW2d 470 (1989). This Court also reviews for an abuse of discretion a trial court's decision on a motion to withdraw a plea. *People v Martinez*, 307 Mich App 641, 646; 861 NW2d 905 (2014). The trial court's underlying factual findings are reviewed for clear error. *Odom*, 327 Mich App at 303. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 304 (quotation marks and citation omitted). This Court generally affirms a trial court's ruling if the result was correct, irrespective of the trial court's reasoning. *People v Meeker (On Remand)*, 340 Mich App 559, 569; 986 NW2d 622 (2022).

Underlying questions of law, including the interpretation and application of a court rule, are reviewed de novo. *Martinez*, 307 Mich App at 646-647. "Interpreting the meaning of a court order involves questions of law that we review de novo on appeal." *Citizens for Higgins Lake Legal Levels v Roscommon Co Bd of Comm'rs*, 341 Mich App 161, 177; 988 NW2d 841 (2022). "This Court reviews de novo as a question of law the proper interpretation of a contract, including a trial court's determination whether contract language is ambiguous." *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021). De novo review means this Court evaluates "the legal issue independently and without deference to the court below." *Krieger v Dep't of Environment, Great Lakes, and Energy*, ___ Mich App ___, ___ n 16; ___ NW2d ___ (2023) (Docket Nos. 359895 *et al*.); slip op at 24. Although the question of "[w]hether a contract is ambiguous is a question of law," the matter of "determining the meaning of ambiguous contract language becomes a question of fact." *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 474; 986 NW2d 427 (2022). The trial court's interpretation of an ambiguous contract is therefore reviewed for clear error as a factual issue. *People v Swirles (After Remand)*, 218 Mich App 133, 136; 553 NW2d 357 (1996).

## III. PRINCIPLES OF LAW

Plea agreements "are essentially contracts and can be subject to the same rules and principles governing contracts." *People v Smith*, 502 Mich 624, 632; 918 NW2d 718 (2018). In addition, because plea agreements "are concerned with the criminal law, they are governed by the 'interests of justice' rather than by commercial principles." *People v Rydzewski*, 331 Mich App 126, 138; 951 NW2d 356 (2020) (citation omitted). Although the terms of a plea agreement "must serve the interests of justice," those terms are determined pursuant to ordinary contract principles of seeking to determine the intent of the parties from the language of their contract and then enforcing unambiguous language. *Id.* at 318 (quotation marks and citation omitted). General contract principles are also applied to the construction of plea agreements that have ambiguous terms. *Id.* A patent ambiguity is apparent on the face of a contract, whereas a latent ambiguity arises when the contract is carried out. *Id.* at 139. "A contractual term can be ambiguous either when it is equally susceptible to more than a single meaning or if two provisions of the same contract irreconcilably conflict with each other." *Id.* at 138-139 (quotation marks, brackets, and citation omitted). "When the contract's terms are ambiguous, a court may look to extrinsic evidence to determine the parties' intent." *Id.* at 138. A plea agreement must be knowing and intelligent, which means the defendant must have an accurate understanding of the benefits of the bargain and the likely consequences of the plea. *People v Guyton*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 163700); slip op at 8-12.

## IV. ANALYSIS

Both the appeal and the cross-appeal ultimately turn on the parties' disagreement whether it is possible to determine from reading the plea transcript and the record what they actually agreed to at the plea hearing. Defendant argues that any agreement was ambiguous, and plaintiff argues that there was no possible ambiguity. We agree with plaintiff.

There was no confusion that the trial court had conducted a *Cobbs* evaluation and pronounced a likely minimum sentence of 32 months, because that evaluation was recited in the written plea agreement and stated on the record. There was also no confusion that there was no agreement *to* impose a sentence of 32 months. The prosecutor expressly stated that there was no sentence agreement, and defendant acknowledged that the court was "likely to give him 32 months" but expressed the desire to address the trial court in person at sentencing regarding the ultimate sentence. At sentencing, defendant received a full opportunity to address the trial court and argue in support of a lesser sentence, and the trial court ultimately did not exceed its *Cobbs* evaluation of 32 months.

The prosecutor's statement that there was no sentencing agreement is unambiguously supported by the record. Unlike a sentence recommendation, a sentence agreement requires the assent of the trial court. *People v Killebrew*, 416 Mich 189, 206-210; 330 NW2d 834 (1982). The trial court plainly told defendant that although his "initial" guidelines range was zero to nine months, the trial court was expressly not guaranteeing a minimum sentence within that range. Defendant signified his understanding. Although defense counsel stated that there was an agreement "to the guidelines, and then to allow the Court to sentence appropriately," defense counsel did *not* represent that there was an agreement to sentence within those guidelines or to recommend a sentence within those guidelines. Therefore, defendant could not possibly have

entered his plea on the expectation that he would receive a minimum sentence between zero and nine months.

Defendant argued in his motion to correct that he was not informed "that the guidelines were merely an estimate and that the guidelines could score higher." However, the written plea agreement form expressly states that the guidelines range was an estimate, and, consistent with that form, the trial court expressly warned defendant that his guidelines range was "initial." Even if there was any ambiguity regarding defendant's understanding of his guidelines range, any such confusion would have been irrelevant. As stated, the trial court clearly warned defendant that his minimum sentence might *not* fall within the range of zero to nine months, to which defense counsel did not object. Therefore, there was unambiguously no agreement, understanding, or reasonable expectation that defendant would receive a minimum sentence of between zero and nine months. Defendant's plea could not have been made on the basis of a misunderstanding of the ramifications of that plea. See *Guyton*, ___ Mich at ___; slip op at 8-12.

Reversed.

/s/ Michael J. Riordan
/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett