*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ELVA CLAIRENE MCCLURE,

        Defendant-Appellant.

UNPUBLISHED
December 20, 2024
9:56 AM

No. 367882
Barry Circuit Court
LC No. 2022-000642-FC

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

Defendant, Elva Clairene McClure, pleaded guilty to one count of aggravated child sexually abusive activity, MCL 750.145c(2)(b); one count of second-degree criminal sexual conduct with a person under 13 years of age (CSC-II), MCL 750.520c(1)(a); one count of second-degree child abuse, MCL 750.136b(3); one count of surveilling an unclothed person, MCL 750.539j(2)(a)(*i*); and one count of third-degree criminal sexual conduct with force or coercion (CSC-III), MCL 750.520d(1)(b). Pursuant to a *Killebrew*[1] agreement, the trial court sentenced defendant to serve concurrent terms of imprisonment for each of the offenses. The trial court also imposed additional conditions of sentence, including a condition that essentially prohibited defendant from having contact with anyone outside of prison other than legal counsel (no-contact condition). Defendant now appeals by leave granted,[2] arguing that the no-contact condition is impermissible and unconstitutional. We find that the trial court was not authorized to impose the challenged condition of sentence, and we therefore reverse and remand for removal of that condition from defendant's sentence.

This case arises out of defendant's enablement of and participation in the sexual assaults of her daughter and granddaughter. Defendant encouraged and participated in the sexual assault

---

[1] *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982).

[2] *People v McClure*, unpublished order of the Court of Appeals, entered November 9, 2023 (Docket No. 367882).

of her three-year-old granddaughter; engaged in digital-to-vaginal sexual contact with her granddaughter; and aided and abetted Allen McClure—defendant's husband at the time, whom she knew had a history of sexual misconduct—in the oral-to-vaginal sexual penetration of her granddaughter.  Defendant also repeatedly allowed Allen to be alone at night in her daughter's bedroom where he would lift the daughter's shirt and expose her breasts.  Defendant also surveilled her daughter with a camera when her daughter was undressed in the bathroom; she would then send the recordings to Allen.

During sentencing, the trial court explained that it would impose additional conditions on defendant's sentence:

> I also find that [defendant is] clearly, clearly a predator and a danger.  She's already proven that she'll violate any court order's rules, to place young kids at risk, by taking young kids to other people, by taking young kids to the prison, by doing all that, by sending pictures to somebody in prison.
>
> For that reason, not as a punishment, but for that reason, in addition to the sentence that I will give, she will have no access to J-Pay.  She will have no mail, no phone, no social media, no computer access, no visitors whatsoever while she's in prison. . . . Because she's a predator and she's dangerous.  The only person she may have any contact with, pursuant to my order, while she's in prison, will be her attorney.  No one else.  And this is for the protection of society.

Correspondingly, defendant's amended judgment of sentence provided, among other things, "Defendant to have no jpay.  Defendant to have no mai1, phone, social media or computer access except with her attorney."[3]  Defendant moved to strike the no-contact condition from her sentence, arguing that it was unnecessary because the concerns raised by the trial court were already addressed by the Michigan Department of Corrections' (MDOC) administrative policies covering the same topics and that the condition was unenforceable within the MDOC system because of those policies.  The trial court denied the motion and defendant now appeals.

Defendant argues that the no-contact condition violates the Michigan Constitution's separation of powers, Const 1963, art 3, § 2, and prohibition against cruel or unusual punishment, Const 1963, art 1, § 16, and that the trial court was not authorized to impose it.  While we ultimately need not reach defendant's constitutional arguments, we agree that she is entitled to relief from the no-contact condition because it was unauthorized by law.

This Court's recent decision in *People v Lafey*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 361936), is on point.  In *Lafey*, the defendant was convicted of first-degree murder, torture, felon in possession of a firearm, and multiple counts of carrying or possessing a firearm

---

[3] The amended judgment of sentence also included, as a condition of sentence, that defendant was "to have no contact with anyone under 18 years of age."  Counsel for defendant confirmed at oral argument before this Court that defendant is not seeking to challenge that condition on appeal.  Accordingly, we will not reach it.

during the commission of a felony. After sentencing the defendant to life in prison without parole, the trial court ordered that the defendant was "to have no JPay, no emails, no phone calls, no letters; only to have contact with his attorney." *Id*. at ___; slip op at 11. "In essence, this condition require[d] that [the] defendant have no contact with individuals outside prison except for legal counsel." *Id*. This Court ordered removal of the condition on the basis that the trial court did not have statutory or inherent authority to impose it:

> When a trial court imposes a no-contact order as a condition of sentence, it must be authorized to do so either by statute or inherent authority. See *United States v Santos Diaz*, 66 F4th 435, 441 (CA 3, 2023). "A judge of a court having jurisdiction may pronounce judgment against and pass sentence upon a person convicted of an offense in that court. The sentence shall not exceed the sentence prescribed by law." MCL 769.1(1). See also *In re Bonner*, 151 US 242, 257; 14 S Ct 323; 38 L Ed 149 (1894) ("It is plain that such court . . . in rendering [criminal] judgment, the court keeps within the limitations prescribed by the law, customary or statutory. When the court goes out of these limitations, its action, to the extent of such excess, is void."). [*Id*. at ___; slip op at 12.]

The *Lafey* Court found that there was no statutory authority for the trial court to impose the additional sentencing conditions because each of the statutes under which the defendant was convicted provided for terms of imprisonment "without reference to authority of the trial court to prohibit contact with all, or virtually all, individuals outside prison." *Id*.

Applying the *Lafey* Court's reasoning to the statutes at issue in this case, we reach the same conclusion. None of the statutes under which defendant was sentenced contain a reference to the trial court's authority to prohibit contact with virtually all individuals outside of prison.[4] Further, "there is no statute expressly authorizing the trial court to impose a blanket no-contact condition of sentence as was imposed in this case, and we are unaware of any statute that authorizes such a sentence by implication." *Id*.

We also conclude, as in *Lafey*, that the trial court did not have the inherent authority to impose the no-contact condition.

> Trial courts have long had the inherent authority to control their courtrooms. This inherent authority includes the ability to employ procedures that assist a witness when testifying, such as the use of a witness screen to prevent the witness from seeing the defendant. Moreover, courts possess limited inherent authority to properly continue the administration of justice. However, the power to protect the administration of justice must be exercised with circumspection. It may be invoked

---

[4] MCL 750.136b(4) and MCL 750.520d(2) each provide for punishment by imprisonment. MCL 750.145c(2)(b) and MCL 750.539j(2)(a)(*i*) each provide for punishment by imprisonment, by fine, or both. And MCL 750.520c(2) provides for punishment by imprisonment and further provides that "the court shall sentence the defendant to lifetime electronic monitoring under section 520n if the violation involved sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age."

only when the defendant's conduct presents significant interference with the administration of justice. [*Id.* at ___; slip op at 13 (cleaned up).]

The *Lafey* Court concluded that "the trial court did not possess the inherent authority" to impose the condition of sentence at issue. This Court found that, while "there is some support for the proposition that courts have the inherent authority to impose a limited no-contact order as a condition of sentence for protective, not punitive, purposes," there was "no support for the proposition that they have inherent authority to broadly prohibit contact with all individuals outside of prison, with the sole exception of legal counsel, as an additional punitive measure." *Id.*[5] And, "[t]hat prohibition is not necessary to continue the administration of justice as the incarcerated offender, such as defendant, already is subject to legislatively authorized punishment." *Id.* (quotation marks and citation omitted). Although this case involves different underlying offenses than in *Lafey*, we see no reason why we should reach a different conclusion as to the no-contact condition at issue here.

Accordingly, we conclude that the trial court lacked statutory or inherent authority to impose the no-contact condition, rendering it unauthorized by law.[6] We therefore reverse the no-contact condition placed on defendant's sentence and remand to the trial court to amend defendant's amended judgment of sentence consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani

---

[5] At the sentencing hearing, the trial court in this case explained that it was imposing the no-contact condition "not as punishment," but for "the protection of society." As the *Lafey* Court noted, relying on caselaw from other jurisdictions, there is some support for the proposition that trial courts have inherent authority to issue "limited" no-contact orders for protective purposes. ___ Mich App at ___; slip op at 13. But as recognized in *Lafey*, the sweeping no-contact condition at issue in this case is materially different in kind and scope than such limited protective orders, and is beyond the trial court's inherent authority. Neither *Lafey* nor any other case of which we are aware suggests that this conclusion would depend simply on whether the court described that condition as protective or punitive.

[6] Having so concluded, we need not reach defendant's constitutional challenges to the condition. See *People v Bentley*, ___ Mich App ___, ___ n 3; ___ NW3d ___ (2024) (Docket No. 364303); slip op at 3 n 3 ("It is an undisputed principle of judicial review that questions of constitutionality should not be decided if the case may be disposed of on other grounds.") (cleaned up).