*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. Y. AYALA, Minor.

UNPUBLISHED
May 16, 2024

No. 367195
Genesee Circuit Court
Family Division
LC No. 21-137744-NA

Before: JANSEN, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Respondent-father appeals as of right the termination of his parental rights to the minor child, SYA, under MCL 712A.19b(3)(b)(*i*) (parent's act caused sexual abuse of sibling and reasonable likelihood child will suffer injury or abuse in foreseeable future if placed in parent's home); MCL 712A.19b(3)(j) (reasonable likelihood child will be harmed if returned to parent's home); MCL 712A.19b(3)(k)(*ix*) (parent sexually abused sibling of child and reasonable likelihood child will be harmed if returned to parent's home); and MCL 712A.19b(3)(m)(*i*) (parent convicted of violation of MCL 750.520c and continuing parent-child relationship would be harmful to child). Respondent-father does not challenge the statutory grounds for termination. He argues instead that his plea to jurisdiction under the original petition, which did not seek termination of his parental rights, was invalid because it was induced by promises that petitioner and the trial court did not keep. He also argues that termination of his parental rights was not in SYA's best interests. We affirm.

## I. BACKGROUND

SYA is the daughter of respondent-father and TP. TP has an older daughter, MP, who is unrelated to respondent-father. Respondent-father sexually assaulted MP on multiple occasions when MP was 14 and 15 years old. One of those occasions was during a birthday party for SYA. When MP revealed the abuse, TP immediately ejected respondent-father from the home. Petitioner filed the original petition in this matter following the revelations of sexual abuse. At the time, respondent-father was not living with TP, MP, and SYA, and he had not been arrested. Respondent-father was arrested shortly after the petition was filed, and during these proceedings, he remained either in jail for criminal charges arising out of his sexual assaults of MP or in federal custody for an unrelated matter. Respondent-father entered a plea of no contest to the original

petition. He eventually also entered pleas of no contest in the criminal matter to four counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c, arising out of his sexual assaults of MP, and he was convicted of those charges. Following those convictions, petitioner filed a supplemental petition seeking termination of respondent-father's parental rights. Respondent-father protested the supplemental petition on grounds that it did not set forth any new facts that would justify termination, but he never sought to withdraw his plea. The trial court terminated his parental rights as set forth above.

## II. STANDARDS OF REVIEW

"Whether a trial court can assert jurisdiction over a child protective proceeding is a question of law we review de novo." *In re Hull*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 361537 and 361538); slip op at 3. "Challenges to the court's decision to exercise jurisdiction are reviewed for clear error in light of the court's finding of fact." *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020) (quotation marks and citation omitted). "Generally, whether child protective proceedings complied with a respondent's substantive and procedural due process rights is a question of law that this Court reviews de novo." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). A trial court's factual findings are reviewed for clear error, and a trial court's application of those factual findings "to a statute presents a question of law that we review de novo." *In re Leach*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 362618 and 362621); slip op at 2; see also *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016). The trial court's best-interests findings and statutory-grounds findings are both reviewed for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted).

## III. VALIDITY OF PLEA

Respondent-father's primary argument on appeal is that his plea was induced by promises that were ultimately not kept. The record, however, shows that he was never given any such promises, so there is no basis for finding his plea to have been invalid.

### A. PRESERVATION

As an initial matter, the parties dispute whether this issue is preserved. In general, adjudication errors are considered unpreserved if they are raised after a parent's rights have been terminated. See *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). This Court has held that a challenge to a jurisdictional plea was unpreserved because the respondents "did not move to withdraw their pleas in the trial court or otherwise object to the advice of rights that they were provided." *In re Pederson*, 331 Mich App 445, 452; 951 NW2d 704 (2020). While respondent-father did express concerns to the trial court that the supplemental petition lacked any new factual allegations, he never sought to withdraw his plea in the trial court, never objected to the advice of rights he was given, and never asked the trial court to refrain from authorizing the supplemental termination petition. Accordingly, this issue is unpreserved.

An unpreserved challenge to the validity of a plea is reviewed for plain error. *Id*. at 462-463. Likewise, adjudication errors raised after a parent's rights have been terminated are reviewed for plain error. *In re Ferranti*, 504 Mich at 29. To establish plain error warranting reversal, respondent "must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected their substantial rights." *Id*. The error must also "have seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id*. (quotation marks, brackets, and citation omitted).

## B. APPLICABLE LAW

In the context of child protective proceedings, a respondent's waiver of rights by entering a jurisdictional plea must be voluntary and knowing, meaning "the person entering it must be made fully aware of the direct consequences of the plea." *In re Pederson*, 331 Mich App at 464-465 (quotation marks and citation omitted). To help do this, the trial court must advise the respondent of the enumerated rights set forth in MCR 3.971(B). *Id*. at 465-466. There is no dispute in this case that the trial court did so.

A plea also cannot be knowing or voluntary if it was "induced by reliance on a total package of concessions by both parties to which one party—the state—is no longer bound." *People v Killebrew*, 416 Mich 189, 207; 330 NW2d 834 (1982). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled," and whether "breach of agreement was inadvertent does not lessen its impact." *Santobello v New York*, 404 US 257, 262; 92 S Ct 495; 30 L Ed 2d 427 (1971).

## C. ANALYSIS

Respondent-father argues that his plea was invalid because it was premised on promises that he would be offered reunification services and that petitioner would not seek termination. Fatal to respondent-father's argument is the fact that petitioner never made any such promises.

The hearing at which respondent-father entered his plea was the fourth hearing for which he was present. During a January 2022 hearing, he and the trial court had a colloquy during which the trial court told respondent-father that petitioner was not seeking termination at that time and that services would generally be offered if the trial court took jurisdiction. But the court also emphasized that "it depends," and that termination was always possible. No promises were made, and the trial court in this exchange was clear that the future was not definite. The next month, the Children's Protective Services investigator who signed the petition testified that "at this time" the petition was only seeking jurisdiction. The month after that, respondent-father was still seeking an adjudication trial, and nothing about services, termination, or reunification was discussed.

When respondent-father entered his plea in June 2022, he stated that he had the opportunity to review the petition with his attorney. Respondent-father expressly affirmed his understanding that his plea could later be used to terminate his parental rights. Respondent-father also affirmed his understanding "that, if you fail to follow through with or benefit from services ordered for you by the Court, which services will be identified to you immediately following the Court's taking of this plea, such failure can later be used to terminate your parental rights." Respondent-father

expressly affirmed that he was making the plea of his own volition and nobody promised him anything or threatened him to induce his plea. Immediately after the court accepted respondent-father's plea, services were discussed, all of which were contingent on "[i]f [respondent-father] is released from jail." Respondent-father did not object to the services recommendation; he only asked for services to include the possibility of treatment and to be given supervised parenting time on his release.

Respondent was never promised anything. He was accurately told that petitioner was not seeking termination at that time, but he was also told that petitioner could do so in the future. He was told that services would generally be offered and that noncompliance with any such services would be a possible basis for termination, but he was not told that noncompliance with services was the only reason why his parental rights might be terminated. Respondent-father was made immediately aware that services were contingent on his release from jail, and he did not object to that condition.[1]

Accordingly, respondent-father's plea was not invalidated by the facts that he was not offered services and that petitioner sought termination promptly following respondent-father's convictions for CSC-II arising out of his sexual assaults of SYA's sibling.

## IV. BEST INTERESTS

Respondent-father next argues that the trial court clearly erred by finding that termination of respondent-father's parental rights to SYA was in SYA's best interests. We disagree.

## A. APPLICABLE LAW

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App at 40. "The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). When determining whether termination is in a child's best interests, the trial court may consider all of the available evidence and "should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality." *Id*. (quotation marks and citation omitted). The trial court may consider the entire record when making its best-interests determination. *In re Medina*, 317 Mich App at 237. The trial court must consider and address a child's placement with a relative, which weighs against

---

[1] Additionally, the record indicates that no services *could* have been provided. Petitioner simply had no power to reach respondent-father while he was in federal custody, and the record indicates that no services were available to respondent-father while he was in jail. Petitioner was not obligated to offer services that it did not have available. *In re Terry*, 240 Mich App 14, 27-28; 610 NW2d 563 (2000).

termination, although that placement is not dispositive. *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022).

## B. ANALYSIS

As an initial matter, respondent-father does not challenge any of the statutory grounds for termination.[2] At issue is only whether SYA is likely to be harmed or helped by either severing or maintaining her relationship with respondent-father.

Respondent-father accurately points out that there is no evidence that he sexually abused SYA. Under the doctrine of anticipatory neglect, however, a parent's sexual abuse of one child is probative of how that parent may treat other children, even if only one of those children is the parent's own biological child. *In re Mota*, 334 Mich App 300, 322-323; 964 NW2d 881 (2020). The probative value of the doctrine of anticipatory neglect "is decreased by differences between the children, such as age and medical conditions." *In re Kellogg*, 331 Mich App at 259. While SYA is significantly younger than MP was at the time respondent-father sexually abused her, that distinction is temporary. The only other apparent distinction between MP and SYA is that SYA is respondent-father's biological child. The trial court reasonably regarded that distinction as immaterial.

Further, the trial court did not rely *only* on whether respondent-father was likely to sexually abuse SYA. The trial court found that SYA would be emotionally harmed if respondent-father sexually assaulted another child while SYA was in the home. The trial court found that SYA would also suffer emotional harm if forced to have a relationship with someone who had sexually abused SYA's sibling. Finally, the trial court found that SYA would be harmed by the inevitable contentiousness between TP and respondent-father if TP were forced to coparent with a person who sexually assaulted TP's other daughter. None of those findings are clearly erroneous.

The trial court additionally found that there was no bond between respondent-father and SYA, which was supported by the evidence. The trial court noted that the case could be kept open to see when respondent-father was released from prison, but it reasonably observed that he might not be released for up to 14 more years, and in the meantime, SYA was young and needed stability and permanency. The trial court properly recognized that SYA was in the care of her mother, a relative, and that SYA was safe and well in that placement. It reasonably opined, however, that forcing SYA's mother to have an ongoing coparenting relationship with respondent-father would harm SYA because of the inevitable contentiousness between the parents arising out of respondent-father's sexual assaults of MP. The trial court concluded on the basis of all of the evidence and after considering a multitude of factors that SYA would simply never be safe, even if placed with her mother, if required to have a relationship with respondent-father.

---

[2] There is, in any event, no doubt that respondent-father sexually abused a sibling of SYA for purposes of MCL 712A.19b(3)(b)(*i*) and MCL 712A.19b(3)(k)(*ix*), and he was convicted of a violation of MCL 750.520c for purposes of MCL 712A.19b(3)(m)(*i*).

On this record, the trial court's determination that termination was shown by a preponderance of the evidence to be in SYA's best interests was not clearly erroneous.

Affirmed.

/s/ Kathleen Jansen
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien