*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERIC MARSHALL SLUSSER,

Defendant-Appellant.

UNPUBLISHED
December 03, 2024
2:17 PM

No. 365204
Ingham Circuit Court
LC No. 20-000072-FH

Before: MALDONADO, P.J., and M. J. KELLY and GARRETT, JJ.

PER CURIAM.

In this case, defendant, Eric Marshall Slusser, asks us to reverse the trial court's denial of his motion for relief from judgment and order the trial court to allow him to withdraw his plea. Slusser pleaded *nolo contendere* to assault with intent to do great bodily harm less than murder or by strangulation, MCL 750.84, domestic violence, third offense, MCL 750.814, and being a fourth-offense habitual offender, MCL 769.12. In exchange for his plea, the prosecutor agreed to recommend that the circuit court sentence Slusser to no more than 60 months in prison to run concurrently with an anticipated sentence for violating his probation in Washtenaw Circuit Court. The trial court ultimately rejected the recommendation and sentenced defendant to 152 to 360 months in prison, with credit for 62 days served. We hold that the trial court did not abuse its discretion by denying his motion for relief from judgment and, therefore, we affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 6, 2020, Slusser's girlfriend and the mother of his child, RM, told Slusser that she disclosed to a coworker that Slusser was abusive. In response, Slusser took RM's eyeglasses off her face and broke them by throwing them against a wall. He then threatened to break RM's phone and "headbutted" her in her left eye while yelling at her. Slusser then burned RM's skin by placing a lit cigarette on her face. Thinking she would be safe, RM went into her child's room to sleep, but Slusser entered the room, placed his hands around RM's neck, and began to strangle her. According to RM's statement to police, she felt "her neck popping and could not breathe for approximately ten seconds." The next morning, RM awoke to find her cell phone smashed on the kitchen table. Slusser threatened to kill himself if RM called the police, but RM ultimately

-1-

disclosed Slusser's conduct to police officers, who noted injuries on RM that corroborated her version of events.

At defendant's plea hearing, the district court advised Slusser that a conviction of assault by strangulation could result in a sentence of up to five years' imprisonment and probation for up to five years, his domestic violence conviction could carry a punishment of up 93 days in jail, but because it was Slusser's third offense, he could be sentenced to a maximum of five years' imprisonment, and that, as a fourth-offense habitual offender, he could be sentenced from ten years to a maximum term of life imprisonment. Slusser replied that he understood the charges and punishments, he acknowledged that he was on probation in Washtenaw County when he committed the crimes against RM, and acknowledged that he understood that he could serve a maximum term of life imprisonment. Slusser then waived his arraignment and preliminary examination, and he agreed to enter a plea and submit to sentencing in Ingham Circuit Court.

The prosecutor stated that the parties entered into a *Killebrew*[1] agreement in which defendant would plead no contest to the charges and the prosecutor agreed to request a minimum term of imprisonment of 60 months, to run concurrently with the sentence Slusser would serve for violating his probation in Washtenaw Circuit Court. Defense counsel further advised the trial court that the plea agreement was in writing, although the written agreement has not been supplied to this Court. The trial court stated that it acknowledged the prosecutor's recommendation, but did not agree on any sentence recommendation, the court revoked Slusser's bond, and ordered that Slusser be held while awaiting sentencing.

Thereafter, Slusser appeared for sentencing in Ingham Circuit Court. In reviewing Slusser's presentence investigation report (PSIR), the prosecutor disclosed that, while Slusser was awaiting sentencing, he called the victim, RM, hundreds of times from the county jail and dozens of those calls were completed through Slusser leaving voicemail messages or speaking directly to RM. The prosecutor also read a letter from RM's parents who stated that Slusser repeatedly attempted to contact RM through phone calls, through contact by Slusser's family members, and through Slusser's former cell mate who also repeatedly tried to call and text RM. As read into the record by the prosecutor, the letter further stated that, through those contacts, Slusser tried to "manipulate and convince" RM to not appear in court or to give any information that could prolong Slusser's prison sentence. The record also shows that Slusser attempted to convince RM to say positive things about him so the trial court would lower his sentence. After Slusser admitted to this misconduct while in jail, he stated that he wanted to be sentenced. The trial court noted that it rarely declined to follow a plea recommendation, but after reviewing Slusser's criminal history, the crimes against RM, RM's impact statement in the PSIR, and Slusser's unrelenting attempts to contact RM from jail, the court ultimately sentenced Slusser to serve 152 to 360 months' imprisonment.

On September 8, 2020, Slusser filed a delayed application for leave to appeal in this Court, and argued that the trial court denied him his right to meaningful allocution at sentencing and thereby failed to assess the causes of Slusser's character and conduct. This Court denied Slusser's application "for lack of merit in the grounds presented." *People v Slusser*, unpublished order of

---

[1] *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982).

the Court of Appeals, issued October 14, 2020 (Docket No. 354741). Slusser also filed an application for leave to appeal in our Supreme Court, which the Court denied on April 27, 2021, because the Court was "not persuaded that the questions presented should be reviewed by this Court." *People v Slusser*, 507 Mich 931; 957 NW2d 796 (2021).

On February 17, 2022, Slusser filed a motion for relief from judgment in the trial court, raising the same arguments he now asserts on appeal, including that he should have been allowed to withdraw his no contest plea because he did not know the trial court could decline to abide by the sentence contemplated by the *Killebrew* agreement for post-plea conduct prior to sentencing. On October 14, 2022, the trial court entered an order denying Slusser's motion for relief from judgment because Slusser failed to establish "good cause" for failing to previously raise his arguments as required by MCR 6.508(D)(3). This appeal followed.

## II. DISCUSSION

Slusser argues that the trial court erred by denying his motion for relief from judgment because he established "good cause" for failing to raise this issue in his first appeal. We disagree.

### A. STANDARDS OF REVIEW

In *People v Christian*, 510 Mich 52, 74-75; 987 NW2d 29 (2022), our Supreme Court set forth the standard of review for an order denying relief from judgment as follows:

> A trial court's decision on a motion for relief from judgment is reviewed for an abuse of discretion. *People v Washington*, 508 Mich 107, 130 n 9; 972 NW2d 767 (2021). An abuse of discretion occurs when the court makes a decision that "falls outside the range of reasonable and principled outcomes," *id*., or "makes an error of law," *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

This Court reviews a trial court's findings of fact to support its decision on a motion for relief from judgment for clear error. *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). A finding of fact is clearly erroneous when, although there is evidence to support it, this Court "is left with the definite and firm conviction that a mistake has been made." *People v Chaney*, 327 Mich App 586, 587 n 1; 935 NW2d 66 (2019) (quotation marks and citation omitted).

Slusser also claims that his appellate attorney deprived him of his right to the effective assistance counsel by failing to raise the issues regarding his plea in his first application for leave to appeal. Generally, the determination whether a defendant was deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. See *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews the trial court's factual findings for clear error, and reviews questions of constitutional law de novo. *Id*.

### B. LEGAL PRINCIPLES

Motions for relief from judgment are governed by MCR 6.508 *et seq*. MCR 6.508(D) provides, in relevant part:

The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

\* \* \*

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,

\* \* \*

(*ii*) in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand;

(*iii*) in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case;

\* \* \*

The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

Under MCR 6.508(E), when deciding a motion for relief from judgment, "[t]he court, either orally or in writing, shall set forth in the record its findings of fact and its conclusions of law, and enter an appropriate order disposing of the motion."

As our Supreme Court explained in *Christian*, 510 Mich at 75:

A defendant bringing their first motion for relief from judgment has the burden of demonstrating two things. First, they must show "good cause for failure to raise such grounds on appeal . . . ." MCR 6.508(D)(3)(a). One way to establish good cause is by showing that an external factor prevented appellate counsel from raising an issue on direct appeal. *People v Reed*, 449 Mich 375, 378; 535 NW2d 496 (1995).

Once a defendant demonstrates good cause, the defendant is entitled to relief only on a showing of "actual prejudice from the alleged irregularities that support the claim for relief." MCR 6.508(D)(3)(b).

-4-

## C. ANALYSIS

As discussed, in his motion for relief from judgment, Slusser argued that his "good cause" was that his appellate counsel denied him his right to the effective assistance of counsel. Specifically, Slusser acknowledged that his appellate counsel filed an application for leave to appeal his plea and sentence in Docket No. 354731 and argued that the trial court denied him his right to meaningful allocution during sentencing and failed to consider the causes of Slusser's criminal conduct, particularly with regard to his alcohol abuse. However, Slusser asserted that a stronger argument on appeal would have been what he now claims—that his plea was not knowing and voluntary when the trial court failed to specifically advise him that his misconduct following his plea could invalidate his *Killebrew* plea agreement.

A defendant may establish "good cause" in a motion for relief from judgment by showing that appellate counsel provided ineffective assistance. *People v Gardner*, 482 Mich 41, 50 n 11; 753 NW2d 78 (2008). But appellate counsel is not ineffective for merely failing to raise an arguable claim. *People v Reed*, 449 Mich 375, 379; 535 NW2d 496 (1995) (BOYLE, J.). This is so because "requiring appellate counsel to raise every arguably meritorious issue would undermine the strategic and discretionary decisions that are the essence of skillful lawyering." *Id*. at 387. Instead, to establish that appellate counsel was ineffective, a defendant must "overcome the presumption that counsel functioned as a reasonable appellate attorney in selecting the issues presented" in his direct appeal. *Id*. at 391. In other words, the right to counsel is one of reasonably effective assistance, and a defendant who claims ineffective assistance must show that counsel's representation fell below an objective standard of reasonableness "under prevailing professional norms." *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

We hold that the trial court correctly ruled that Slusser failed to establish "good cause" for relief from judgment on the ground that appellate counsel should have raised this issue in his first application for leave to appeal. The record reflects that the prosecutor raised the issue of Slusser making 1,211 phone calls to the victim, RM, at Slusser's first sentencing hearing and argued that the trial court should consider his misconduct at sentencing. The trial court listened to one of the phone calls that Slusser made, during which he spoke to RM for over 13 minutes in an attempt to persuade her to appear in court on his behalf to ask for a sentence that was less than the 60 months contemplated in his *Killebrew* agreement. The trial court offered to hold an evidentiary hearing to establish a record regarding Slusser's conduct in making so many calls to the victim of his crimes.

But at the continuation of the sentencing hearing, defense counsel stated on the record that he wanted the trial court to abide by the sentence cap of 60 months' imprisonment, notwithstanding Slusser's conduct between his plea and sentencing. According to defense counsel, Slusser did not know that his conduct might persuade the trial court not to accept the sentence cap for his plea. But he further stated that he understood from their conference off the record that the trial court believed that the plea-taking court did not need to advise Slusser that his sentence could be increased from the recommended cap based on his post-plea conduct. Importantly, defense counsel did not argue that Slusser should be allowed to withdraw his plea, but instead argued that Slusser understood the situation, he admitted to defense counsel that he made hundreds of calls to RM from jail, and he would accept whatever punishment the trial court imposed. Slusser also conceded on the record that he made the calls, he expressed remorse for his actions, and said he would accept whatever sentence the trial court ordered.

Thus, the issue was raised on the record in the trial court that the prosecutor no longer recommended a minimum sentence of 60 months in prison and the trial court agreed that 60 months was an insufficient sentence in light of Slusser's post-plea harassment of RM. At no time did Slusser or his attorney express an interest in withdrawing the plea and both spoke at length on the record at the sentencing hearing. Further, when declining the trial court's offer to hold an evidentiary hearing, Slusser admitted his misconduct and specifically stated that it was his wish to go forward with sentencing. After the trial court sentenced Slusser to 152 months in prison, the court immediately advised Slusser of his right to apply for leave to appeal if he believed he had grounds to do so. Thereafter, Slusser did not move for resentencing and he did not raise any claim in his first application for leave to appeal regarding a right to withdraw his plea or that the trial court failed to tell him that his misconduct following his plea might jeopardize the anticipated sentence cap.

Although Slusser takes the position that his first appellate attorney was ineffective for failing to raise arguments about his plea, nothing in the record indicates the failure to do so could constitute ineffective assistance of counsel. The record does not disclose that Slusser wanted to withdraw his plea, and he admitted on the record that his post-plea conduct was improper and accepted that it would result in a longer sentence. Moreover, Slusser has not overcome the presumption that his appellate counsel's decision not to seek to withdraw the plea was strategic. *Reed*, 449 Mich at 391. One compelling reason appellate counsel would not have sought relief with regard to Slusser's plea is that, regardless whether the trial court imposed a higher minimum sentence than the anticipated 60 months in prison, had Slusser gone to trial, there was a possibility that, as a fourth-offense habitual offender, he could receive a maximum sentence of life imprisonment for the convictions of assault with intent to do great bodily harm less than murder and domestic violence. Slusser was repeatedly told that, with the habitual offender enhancement, both charges carried a maximum term of life imprisonment. Although the plea agreement only included a recommended cap on Slusser's minimum sentence, the potential of facing two maximum life terms in prison if he withdrew his plea would cause a reasonable appellate attorney to forego raising an argument that Slusser be permitted to withdraw his plea.

Under the circumstances, his appellate attorney's decision to raise a claim with regard to the length of the trial court's minimum sentence was logically sound, and so was the decision not to challenge Slusser's plea and request a trial. Again, it was not enough for Slusser to assert that his appellate counsel failed to raise a viable legal argument to establish ineffective assistance. *Reed*, 449 Mich at 379, 387, 391. The failure to expose Slusser to a potentially longer sentence was presumably strategic and Slusser made no showing that appellate counsel's failure to raise the issue fell below any prevailing professional norms since it would potentially expose Slusser to a higher punishment ceiling and longer custodial time. Further, Slusser stated his decision on the record that he wanted to be sentenced by the trial court, which is directly contrary to his claim that he should have been allowed to withdraw his plea.

Moreover, Slusser's appellate counsel did not render ineffective assistance in light of the state of the law at the time his appellate counsel sought relief in this Court. The court rules did not require a court to inform a defendant of the potential impact MCR 6.310(B)(3) may have on a plea agreement and no published case stated that a plea-taking court must advise a defendant of the potential impact MCR 6.310(B)(3) could have on a *Killebrew* sentencing agreement. Accordingly, although Slusser maintains that his argument that his plea was faulty was so plainly meritorious

that it was unreasonable for his appellate counsel to exclude it, his position was based on a legal theory that was not established in Michigan law and was also contrary to Slusser's own statement that he wanted to move forward with sentencing. Slusser's appellate counsel's representation did not fall below an objective standard of reasonableness "under prevailing professional norms." *Strickland*, 466 US at 688.

As discussed, to prevail in a motion for relief from judgment, a defendant must establish "good cause" for failing to raise the issue in his first appeal. *Christian*, 510 Mich at 75. For the reasons stated, the trial court did not abuse its discretion when it denied Slusser's motion for relief from judgment because he failed to establish that his appellate attorney deprived him of his right to the effective assistance of counsel. The failure to establish good cause was fatal to Slusser's claim under MCR 6.508(D)(3) and, therefore, the trial court did not abuse its discretion when it denied his motion for relief from judgment.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Kristina Robinson Garrett